**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 17 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

KENMEN ENGINEERING, a partnership
composed of Kenneth Miles and Ken
Menz; KENNETH MILES, an individual;
KEN MENZ, an individual; MILES
SPECIALTY COMPANY, INC., an
Oklahoma corporation d/b/a El Reno
Terminal Grain Company,

        Plaintiffs - Appellants,

    v.

        No. 01-6145

CITY OF UNION, an Oklahoma Municipal
corporation; FRED ALLEN, individually
and in his official capacity as Fire Chief
for the City of Union; BRANDON ELLIS,
individually and in his official capacity as
Chief of Police for the City of Union;
UNKNOWN DEFENDANTS, or person
having responsibility or involvement in the
circumstances of the violations of the civil
rights of the Plaintiff including private
persons acting in concert or joint
participation with the Defendants or other
unnamed Defendants, whether in their
individual or official capacity, and who are
joined herein for purposes of relief by way
of damages as may be appropriate,

        Defendants - Appellees.

---

Mark Lea (Beau) Cantrell (Blake M. Bostick, Oklahoma City, Oklahoma, with him on the briefs), El Reno, Oklahoma, for Plaintiffs-Appellants.

Ambre C. Gooch (David W. Lee, with her on the brief), Lee & Gooch, P.C., Oklahoma City, Oklahoma, for Defendant-Appellees.

Before **TACHA**, **ALDISERT**,[*] and **McWILLIAMS**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

Plaintiffs appeal the district court's order dismissing their claims under 42 U.S.C. § 1983 for lack of subject-matter jurisdiction. For the reasons set forth below, we AFFIRM.

## I. Background

Plaintiffs-appellants in this action are: (1) Kenmen Engineering, a partnership composed of Kenneth Miles and Ken Menz; (2) Miles Speciality Company (d/b/a El Reno Terminal Grain), a corporation in which Mr. Miles is the principal; and (3) Mr. Miles and Mr. Menz in their individual capacities.

---

[*]Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

Defendant-appellee is the City of Union City, Oklahoma, and various Union City officers ("Union City").

Plaintiffs participated in the United States Department of Defense ("DOD") "Return to Manufacturer" recycling program. Through the DOD's program, plaintiffs obtained sixteen tons of magnesium. Plaintiffs stored the magnesium in a grain-storage facility in Union City, Oklahoma.

The appeal before us centers on the effect of a prior state-court judgment. On March 12, 1999, Union City proceeded to Oklahoma state court seeking to enjoin plaintiffs from storing their magnesium within Union City. The Oklahoma state court entered a temporary restraining order and scheduled a hearing for March 22, 1999. During the March 12, 1999 hearing, the Oklahoma state court remarked:

> You understand that if, in fact, the order is found to not be necessary and if there are any costs [plaintiffs] may want to come back against the City of Union City for the payment of costs and moving and storage . . . . I think it would be prudent for the grain, Terminal Grain people that you might want to keep track of all of your expenses and everything else that this order of the Court has because it may be something that at a later date you may make an application for the costs if the Court feels that to be appropriate.

Mr. Miles and Mr. Menz were both present at the March 12, 1999 hearing.

On March 22, 1999, the state court entered a subsequent order, granting Union City's "Motion for a Temporary and Permanent Injunction." There is no

indication that the Oklahoma state court conducted a hearing at this time. The state-court order designated Miles Specialty Company as the sole defendant. Kenmen Engineering, Mr. Menz, [1] and Mr. Miles[2] were not named as parties in the state-court order.[3] The Oklahoma state court scheduled another hearing for May 13, 1999, but cancelled it on May 12, 1999.

According to plaintiffs, as a result of the state court's order, they were forced[4] to sell the magnesium at a discounted price, resulting in economic loss. Plaintiffs also allege that "the judicial proceedings in the [state court] went to [the] issue of temporary injunctive relief and maintenance of the status quo, and

---

[1] Although Mr. Menz was present at the March 12, 1999 state-court proceeding, it is not clear whether he was present at the March 22, 1999 hearing.

[2] Although Mr. Miles was not named in his individual capacity, he is the principal of Miles Specialty Company. In fact, Mr. Miles was the named defendant in the Oklahoma state court's March 12, 1999 temporary restraining order. The record indicates that Mr. Miles appeared on behalf of Miles Specialty Company throughout the state-court proceedings.

[3] While Kenmen Engineering, Mr. Menz, and Mr. Miles were not named parties to the Oklahoma state court's judgment, the March 22, 1999 order did extend to "Defendant Miles Specialty Company, Inc [sic], by and through its officers, agents, servants, employees, attorneys, or representatives." March 22, 1999 Canadian County Dist. Ct. Order at ¶ 2.

[4] Neither the state court's March 12, 1999 "Temporary Restraining Order" nor its March 22, 1999 "Order" granting Union City's "Motion for a Temporary and Permanent Injunction" specifically directed plaintiffs to sell their magnesium or to transport it from Union City. Rather, both orders appear to require merely that plaintiffs store the magnesium in compliance with all applicable local, state, and federal laws. Nevertheless, we accept plaintiffs' characterization of the events for purposes of our decision.

[the state court] made no findings or orders beyond such interim measures, and that no consideration was given in said proceedings to any rights deprivation claim by [plaintiffs]."

Plaintiffs then brought the present action in federal court, seeking damages for losses incurred in connection with the magnesium sale, under two theories: (1) Union City's actions amounted to an unlawful taking of plaintiffs' property without due process of law and (2) the Hazardous Materials Transportation Act preempted Union City's application of its municipal fire code to plaintiffs' activities. Plaintiffs also sought to recover for allegedly defamatory statements made by Union City officials.

The district court dismissed plaintiffs' complaint, concluding that the court lacked subject-matter jurisdiction under the Rooker-Feldman doctrine. On appeal, plaintiffs argue that Rooker-Feldman does not prohibit a federal court from exercising jurisdiction over their claims. First, they argue that the Rooker-Feldman doctrine is inapplicable here, because (1) the Oklahoma state court's injunction was not a judgment of the state's highest court, and (2) the Oklahoma state court's judgment was not an "appealable" or "final" order. Second, they argue that even if the Rooker-Feldman doctrine applies, it does not bar their claims, because (1) plaintiffs' constitutional and preemption claims are not "inextricably intertwined" with the Oklahoma state court's judgment; (2) the

Oklahoma state-court proceeding did not afford plaintiffs a full and fair opportunity to litigate the merits of their constitutional and preemption claims; and (3) Kenmen Engineering, Miles, and Menz were not named parties in the Oklahoma state court's judgment. We consider each of these contentions below.

## II. Discussion

### A. The *Rooker-Feldman* Doctrine

We review the district court's dismissal for lack of subject-matter jurisdiction de novo. Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).

Under 28 U.S.C. § 1257, "federal review of state court judgments can be obtained only in the United States Supreme Court." Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1169 (10th Cir. 1998) (citing Dist. of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 476 (1983)). As a result, the Rooker-Feldman doctrine prohibits a lower federal court from considering claims actually decided by a state court, Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16 (1923), and claims "inextricably intertwined" with a prior state-court judgment. Feldman, 460 U.S. at 483 n.16. In other words, Rooker-Feldman precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De

Grandy, 512 U.S. 997, 1005-06 (1994).

     B.     Whether the *Rooker-Feldman* Doctrine Applies to the Oklahoma State Court's Judgment.

Initially, plaintiffs argue that the Rooker-Feldman does not apply to the Oklahoma state-court judgment in this case. We construe plaintiffs' argument to be twofold. First, plaintiffs contend that Rooker-Feldman does not apply where the state-court judgment under consideration is not that of the state's highest court. Second, plaintiffs argue that Rooker-Feldman does not apply where the state-court judgment at issue is not an "appealable" or "final" order. We reject both contentions.

     1.     *Whether* Rooker-Feldman *Applies Where the State-Court Judgment Under Consideration Is Not That of the State's Highest Court.*

Plaintiffs contend that the Rooker-Feldman doctrine does not apply to this case because the Oklahoma state-court judgment at issue is not that of the state's highest court. We disagree. Although the Supreme Court has never decided the question, we have previously applied the Rooker-Feldman doctrine to judgments of intermediate state courts. See, e.g., Facio v. Jones, 929 F.2d 541, 542-43 (10th Cir. 1991) (applying Rooker-Feldman to the decision of an intermediate state-court judgment); Anderson v. Colo., 793 F.2d 262, 263-64 (10th Cir. 1986) (same). Thus, in the Tenth Circuit, Rooker-Feldman applies to all state-court judgments, including those of intermediate state courts. Accord Worldwide

-7-

Church of God v. McNair, 805 F.2d 888, 893 n.3 (9th Cir. 1986) ("[T]he Feldman doctrine should apply to state judgments even though state court appeals are not final."); Hale v. Harney, 786 F.2d 688, 691 (5th Cir. 1986) ("We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system.").

2.      *Whether* Rooker-Feldman *Applies Where the State-Court Judgment Under Consideration Is Not an "Appealable" or "Final" Order.*

According to plaintiffs, the Oklahoma state court issued only temporary injunctive relief and made no findings or orders beyond such interim measures. Plaintiffs contend that the absence of a "final" state-court order renders the Rooker-Feldman doctrine inapplicable. We reject plaintiffs' contention for two reasons.

First, we disagree with plaintiffs' characterization of the Oklahoma state court's order. The March 22, 1999 order states that it is granting Union City's "Motion for a Temporary and Permanent Injunction." A permanent injunction is a "final" judgment under Oklahoma law. Morse v. Earnest, Inc., 547 P.2d 955, 957 (Okla. 1976) ("A permanent injunction is the final judgment in an action; the final disposition following a hearing on the merits."). Further, plaintiffs' contention that the Oklahoma state-court injunction forced them to sell their magnesium

-8-

belies their characterization of the state court's order as "temporary." Under Oklahoma law, a temporary injunction operates "to preserve the status quo." Lincoln Bank & Trust Co. v. Okla. Tax Comm'n, 827 P.2d 1314, 1317 (Okla. 1992). "Its function is not to change the position of the parties." Weis v. Reinberger, 670 P.2d 609, 611 (Okla. Ct. App. 1983); cf. Stuart v. Titus, 400 P.2d 797, 800 (Okla. 1965) (characterizing a permanent injunction as a "remedy . . . compelling the alteration, destruction, or removal of property") (emphasis added and quotations omitted). Finally, even if the state court granted only a temporary injunction, a "temporary injunction" is an appealable order under Oklahoma state law. 12 OKLA. STAT. ANN. § 993 ("When an order . . . grants a temporary or permanent injunction . . . the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause."). Accordingly, whether the injunction was temporary or permanent, we are satisfied that the state court's judgment in this case was a final, appealable order under Oklahoma state law.

Second, the Rooker-Feldman doctrine — unlike res judicata — does not distinguish between "temporary" and "final" orders. On this question, our prior decisions applying Rooker-Feldman to intermediate state-court judgments are instructive. See Facio, 929 F.2d at 542-43 (applying Rooker-Feldman to an intermediate state-court judgment); Anderson, 793 F.2d at 263-64 (same). We

-9-

have already rejected plaintiffs' argument that Rooker-Feldman does not apply where the state-court judgment at issue is subject to modification on appeal by a superior state court. It would be highly illogical to embrace the similar argument that Rooker-Feldman does not apply where the state-court judgment at issue is subject to modification by the rendering state court.

Moreover, all the factors counseling against lower federal-court review of intermediate state-court judgments apply equally to non-final state-court judgments. On this point, the Second Circuit's discussion in Texaco, Inc. v. Pennzoil Co. , 784 F.2d 1133 (2d Cir. 1986) rev'd on other grounds 481 U.S. 1 (1987), warrants repeating:

> Allowing lower federal courts to review the judgments of state lower courts is as intrusive and as likely to breed antagonism between state and federal systems as allowing federal court review of the judgments of the states' highest courts. Indeed, if Rooker-Feldman only barred federal review of judgments which had been fully appealed through the state system, it would foster federal/state rivalry by creating incentives for disappointed state court appellants to forum-shop, jumping over to federal courts instead of appealing their cases to the states' highest tribunals.

Id. at 1142-43. With these considerations in mind, it is inconceivable that Congress intended any such distinction under 28 U.S.C. § 1257. Under Rooker-Feldman, "lower federal courts possess no power whatever to sit in direct review of state court decisions." Feldman, 460 U.S. at 483 n.16 (quoting Atl. Coast Line

-10-

R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 296 (1970)). This prohibition extends to all state-court decisions — final or otherwise.

### 3. *Conclusion*

For these reasons, we reject plaintiffs' contention that the Rooker-Feldman doctrine does not apply to the Oklahoma state-court judgment in this case. Accordingly, we proceed to consider plaintiffs' federal-court claims under the Rooker-Feldman doctrine.

### C. Whether *Rooker-Feldman* Bars Plaintiffs' Federal Claims.

#### 1. *Whether Plaintiffs' Federal-Court Claims Are Inextricably Intertwined with the Oklahoma State-Court Judgment.*

In its initial formulation of what is now known as the Rooker-Feldman doctrine, the Supreme Court limited the principle to claims actually decided by a state court. See Rooker, 263 U.S. at 416. In the case before us, the Oklahoma state court did not actually decide (1) whether the Hazardous Materials Transportation Act preempted Union City's application of its municipal fire code to plaintiffs' activities, or (2) whether Union City's actions violated plaintiffs' constitutional rights. Feldman, however, extended the doctrine articulated in Rooker to claims "inextricably intertwined" with a state-court judgment. 460 U.S. at 483 n.16. We must therefore consider whether the plaintiffs' preemption and constitutional claims are "inextricably intertwined" with the Oklahoma state court's judgment.

The Supreme Court has considered the contours of the "inextricably intertwined" corollary to Rooker in two cases, Feldman and Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987). In Feldman, the District of Columbia Court of Appeals denied Feldman's application to the D.C. bar, based on a rule limiting bar admission to graduates of ABA-accredited law schools. 460 U.S. at 465. Feldman brought a subsequent action in federal court, mounting two separate challenges: (1) a general challenge to the constitutionality of the bar-admission rule and (2) a specific challenge to the District of Columbia Court of Appeals' decision in his particular case. Id. at 487. Relying on 28 U.S.C. § 1257, the Court held that a federal district court had subject-matter jurisdiction over the former, but not the latter challenge. Id. at 476, 482-83. Federal courts "have subject matter jurisdiction over general challenges to state bar rules . . . which do not require review of a final state court judgment in a particular case;" they do not, however, "have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Id. at 486.

In Pennzoil, five justices concluded in concurring opinions that Rooker-Feldman did not divest a federal court of jurisdiction over Texaco's constitutional challenge to Texas's post-judgment collection procedures. See Pennzoil, 481 U.S. at 18 (Scalia, J., concurring); id. at 21 (Brennan, J., concurring); id. at 28

(Blackmun, J., concurring); <u>id.</u> at 31 n.3 (Stevens, J., concurring).[5] Justice

Brennan characterized Texaco's challenge as "'separable from and collateral to'

the merits of the state-court judgment." <u>Id.</u> at 21 (Brennan, J., concurring).

Thus, the Supreme Court has identified two categories of cases that fall

outside <u>Feldman</u>'s "inextricably intertwined" umbrella. First, under <u>Feldman</u>, a

party may bring a general constitutional challenge to a state law, provided that:

(1) the party does not request that the federal court upset[6] a prior state-court

judgment applying that law against the party, <u>see</u> <u>Lemonds v. St. Louis County</u>,

222 F.3d 488, 494 (8th Cir. 2000) (citing <u>Feldman</u>, 460 U.S. at 482-86), and (2)

the prior state-court judgment did not <u>actually decide</u> that the state law at issue

was facially constitutional, <u>see</u> <u>Rooker</u>, 263 U.S. at 415-16. Second, under

<u>Pennzoil</u>, a party may challenge state procedures for enforcement of a judgment,

where consideration of the underlying state-court decision is not required. <u>See,</u>

<u>e.g.,</u> <u>Kiowa Indian Tribe</u>, 150 F.3d at 1170-71.

These two categories, however, provide little guidance in many cases

---

[5] Justice O'Connor, who joined Justice Scalia's concurrence, was the fifth justice. Although Justice Marshall joined Justice Brennan's and Justice Stevens's concurrences, he took a different position on <u>Rooker-Feldman</u> in his own concurrence. <u>See</u> <u>Pennzoil</u>, 481 U.S. at 26 (Marshall, J., concurring).

[6] We need not consider the myriad ways a federal court might "upset" a state-court judgment, but two obvious examples are vacating the state-court judgment, <u>see, e.g.,</u> <u>Facio v. Jones</u>, 929 F.2d 541 (10th Cir. 1991), and awarding damages for losses incurred as a result of complying with the state-court judgment, <u>see, e.g.,</u> <u>Ritter v. Ross</u>, 992 F.2d 750 (7th Cir. 1993).

presenting the "inextricably intertwined" question. Although it is difficult to

formulate a foolproof test, in general we must ask "whether the injury alleged by

the federal plaintiff resulted from the state court judgment itself or is distinct

from that judgment." Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996). Three

related concepts — injury, causation, and redressability — inform this analysis.

Cf. GASH Assoc. v. Village of Rosemont, Ill., 995 F.3d 726, 729 (7th Cir. 1993)

(invoking Rooker-Feldman where "the injury of which [the plaintiff]

complain[ed] was caused by the [state court] judgment"); Facio, 929 F.2d at 544-

45 (using standing analysis as an aid in applying Rooker-Feldman). In other

words, we approach the question by asking whether the state-court judgment

caused, actually and proximately,[7] the injury for which the federal-court plaintiff

seeks redress. If it did, Rooker-Feldman deprives the federal court of

jurisdiction.

In conducting this analysis, we must pay close attention to the relief sought

by the federal-court plaintiff; we cannot simply compare the issues involved in

the state-court proceeding to those raised in the federal-court plaintiff's

---

[7] Actual causation alone will not suffice, and thus we may not simply apply a "but-for" test. For example, in Kiowa Indian Tribe, we held that the Tribe's section 1983 challenge to "the use of state court processes to seize tribal assets in satisfaction of state court judgments" was not "inextricably intertwined" with the underlying state-court judgment, despite the fact that the satisfaction-of-judgment procedures would not have been at issue but for the underlying state-court judgment. See 150 F.3d at 1171.

-14-

complaint.  Rather than prohibiting the relitigation of issues and claims (the province of the preclusion doctrines), Rooker-Feldman protects state-court judgments from impermissible appellate review by lower federal courts.

In this case, plaintiffs seek monetary damages attributable to losses they sustained as a result of being forced — by state-court order — to remove magnesium from their Union City storage facility.  Plaintiffs do not request any form of prospective declaratory or injunctive relief.

Ritter v. Ross, 992 F.2d 750 (7th Cir. 1993), involved facts similar to those in this case.  In Ritter, a Wisconsin county obtained and executed a foreclosure judgment against the plaintiff's property, in satisfaction of unpaid property taxes. Id. at 751.  The plaintiff then brought suit in federal court, alleging that (1) the court commenced the foreclosure action without providing adequate notice to the plaintiff, resulting in a deprivation of property without due process, and (2) the county's actions constituted a "taking" of property without just compensation in violation of the Fifth Amendment.  Id. at 752.

In his due-process claim, the plaintiff challenged both the county's failure to provide him with adequate notice and its adoption of the procedures in place for enforcing the property-tax lien.  Id.  The Seventh Circuit first considered the nature of the latter claim.  Id. at 754.  The plaintiff did not seek a declaratory judgment, effective prospectively, relating to the state-court enforcement

procedures for property-tax liens. Rather, the plaintiff conceded that "but for the tax lien foreclosure judgment . . . [he] would have suffered no injury." Id. at 754. Thus, even if the plaintiff was mounting a "general" challenge to the county's procedures, cf. Feldman, 460 U.S. at 487, the only redress he sought was an "undoing" of the prior state-court judgment — a "particularized challenge to an adjudication against him in state court" clearly barred under Rooker-Feldman. Ritter, 992 F.2d at 755 (citations and quotations omitted).

In this case, plaintiffs' requested relief — monetary damages — would necessarily undo the Oklahoma state court's judgment. Plaintiffs request that this court place them back in the position they occupied prior to the Oklahoma state-court judgment. This we cannot do. As in Ritter, absent the Oklahoma state court's injunction, no forced sale of the magnesium would have occurred and plaintiffs would not be seeking relief in federal court. See Ritter, 992 F.2d at 754. Accordingly, we hold that plaintiffs' constitutional claims are "inextricably intertwined" with the Oklahoma state-court judgment and barred under Rooker-Feldman. Feldman, 460 U.S. at 483.

Considering plaintiffs' preemption claim, we again focus on the requested relief. Plaintiffs do not seek prospective relief in federal court declaring that the Hazardous Materials Transportation Act preempts Union City's municipal fire

-16-

code.[8]  In other words, the injury for which plaintiffs seek redress is not the possibility of Union City applying its municipal fire code against them in the future.  Rather, plaintiffs seek damages for Union City's past application of its municipal fire code—an application sanctioned in a prior state-court judgment.  Compare Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir. 1989) (holding Rooker-Feldman inapplicable to party's prospective challenge to state bar's reinstatement rules), with Stern v. Nix, 840 F.2d 208, 212 (3d Cir. 1988) (applying Rooker-Feldman to bar disbarred attorney's retrospective challenge to state's disbarment procedures).  Under Feldman, we have no jurisdiction to consider this claim.  460 U.S. at 486.

For the reasons stated above, we hold that plaintiffs' preemption and constitutional claims are inextricably intertwined with the Oklahoma state court's injunction.  Under the Rooker-Feldman doctrine, we therefore lack jurisdiction to consider either claim.  Feldman, 460 U.S. at 483.

2. *Whether* Rooker-Feldman *Applies Where Plaintiffs Had No Opportunity to Litigate Their Claims in the Oklahoma State-Court Proceeding.*

Plaintiffs attempt to avoid this result by arguing that they did not have a full and fair opportunity to litigate their claims in the prior state-court

---

[8] We express no opinion on the applicability of Rooker-Feldman to such a suit.

-17-

proceedings. We find this contention unavailing.

In Johnson v. Rodrigues, we considered whether a prior state-court adoption proceeding, to which the federal plaintiff was not a party, barred the federal plaintiff's general constitutional challenge to Utah's adoption laws under Rooker-Feldman. 226 F.3d 1103, 1107-08 (10th Cir. 2000). We held that Rooker-Feldman did not bar the suit for two reasons. Id. at 1108. First, we noted that the federal plaintiff's suit was a "discrete general challenge to the validity of the Utah adoption laws . . . thus distinguishing [the] case from one challenging the merits of a particular state court ruling." Id. Second, we noted that the federal plaintiff was not a party to the state-court adoption proceeding. Id. at 1108. In considering the relevance of the federal plaintiff's status as a "non-party" to the state-court proceeding, we stated: "We are convinced that the Rooker-Feldman doctrine does not bar a federal action when the [non-party] plaintiff, as here, lacked a reasonable opportunity to litigate claims in the state court." Id. at 1110.

Had we based our decision in Rodrigues solely on the lack of a fair opportunity to litigate the claim, this language would support plaintiffs' contention in the present case. We did not. Indeed, we have previously applied the Rooker-Feldman doctrine despite the fact that the federal-court plaintiff had no opportunity to litigate her claims in the state-court proceeding. See Facio, 929

-18-

F.2d at 542-44; <u>Anderson</u>, 793 F.2d at 263.  <u>Rooker-Feldman</u> bars any suit that seeks to disrupt or "undo" a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims.  <u>Facio</u>, 929 F.2d at 44; <u>Anderson</u>, 793 F.2d at 264.[9]

Injecting the full-and-fair-opportunity-to-litigate inquiry into the <u>Rooker-Feldman</u> analysis tends to blur the distinction between res judicata and <u>Rooker-Feldman</u>.  The two are not coextensive.  <u>See</u> <u>GASH</u>, 995 F.3d at 728.  The <u>Rooker-Feldman</u> doctrine is a <u>jurisdictional</u> prohibition, based on 28 U.S.C. § 1257.  <u>See</u> <u>generally</u> LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW 598

---

[9] Thus, while "[a] person would ordinarily lack a reasonable opportunity to litigate claims in an action in which the person was not a party," <u>Rodrigues</u>, 226 F.3d at 1110, it is not the absence of an opportunity to litigate that precludes operation of the <u>Rooker-Feldman</u> doctrine.  <u>See</u> <u>Facio</u>, 929 F.2d at 44; <u>Anderson</u>, 793 F.2d at 264.  Significantly, in <u>Rodrigues</u>, we based our holding on the Supreme Court's decision in <u>De Grandy</u>.  <u>See</u> <u>Rodrigues</u>, 226 F.3d at 1110.  The Court's analysis in <u>De Grandy</u> did not focus on the lack of a previous opportunity to litigate the claims at issue.  512 U.S. at 1005-06.  Rather, <u>De Grandy</u> stressed that the United States — the federal-court plaintiff — was not a party to the state-court proceeding; accordingly, it was in no position to appeal the state-court judgment and its federal-court suit did not directly attack the state-court judgment.  <u>Id.</u> at 1006.  Thus, consideration of whether a federal-court plaintiff lacked an opportunity to previously litigate her claims in a state-court proceeding is only relevant insofar as it informs the analysis of whether the federal-court plaintiff is a "non-party" for purposes of <u>De Grandy</u>.  <u>See</u> <u>Rodrigues</u>, 226 F.3d at 1109 ("As [<u>De Grandy</u>] teaches, the <u>Rooker-Feldman</u> doctrine should not be applied against <u>non-parties</u>.") (emphasis added).

-19-

(3d ed. 2000) (recognizing that the jurisdictional nature of <u>Rooker-Feldman</u> distinguishes it from 28 U.S.C. § 1738's rule regarding the preclusive effect of state-court judgments). As <u>Feldman</u> makes clear, section 1257 divests lower federal courts of subject-matter jurisdiction over appeals from state-court decisions. <u>See</u> 460 U.S. at 476 (citing 28 U.S.C. § 1257). Under <u>Rooker-Feldman</u>, a court must ask "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." <u>Garry</u>, 82 F.3d at 1365.

In contrast, res judicata bars a claim or issue that was actually decided or could have been decided in a previous action. <u>See</u> <u>Nat'l Diversified Bus. Serv., Inc. v. Corp. Fin. Opportunities, Inc.</u>, 946 P.2d 662, 667 (Okla. 1997).[10] Further, res judicata is <u>not</u> a jurisdictional bar; it is an affirmative defense, subject to waiver. <u>See</u> FED. R. CIV. PRO. 8(c) ("In pleading to a preceding pleading, a party <u>shall</u> set forth affirmatively . . . res judicata . . . and any other matter constituting an avoidance or affirmative defense.") (emphasis added); <u>Horwitz v. State Bd. of Med. Examiners of State of Colo.</u>, 822 F.2d 1508, 1512 (10th Cir. 1987) ("Res

---

[10] In federal court, 28 U.S.C. § 1738 "governs the preclusive effect to be given the judgments and records of state courts." <u>Univ. of Tenn. v. Elliot</u>, 478 U.S. 788, 794 (1986). Under section 1738, state-court judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.

judicata rules and principles . . . are waived if not raised as affirmative defenses in the trial court and cannot be raised for the first time on appeal unless peculiar facts and the interests of judicial economy dictate otherwise.") (citations omitted). Thus, although Rooker-Feldman and res judicata may often lead to similar results, the two inquiries are distinct.[11] "[R]es judicata is largely a matter of common law and involves the impropriety of permitting parties to have 'two bites at the apple,' [but] Rooker- Feldman is based squarely on federal law and is concerned with federalism and the proper delineation of the power of the lower federal courts." Lemonds, 222 F.3d at 495. The Seventh Circuit in GASH highlighted the interplay:

> The Rooker-Feldman doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is

---

[11] Focusing on the purposes of the two doctrines also underscores the distinction. Rooker-Feldman's jurisdictional prohibition fulfills Congress's intent under section 1257: maintenance of our "two 'essentially separate legal systems.'" Texaco, 784 F.2d at 1142 (quotations omitted). In other words, section 1257 and Rooker-Feldman operate to protect state-court sovereignty. See Facio, 929 F.2d at 545 (recognizing federalism as the public policy underlying Rooker-Feldman and section 1257). On the other hand, federal res judicata seeks to (1) protect litigants from the burden of repetitive litigation, and (2) conserve the judicial resources of the federal courts. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) (recognizing res judicata's "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation").

> jurisdiction and state law determines whether the
> defendant prevails under principles of preclusion.

GASH, 995 F.2d at 728 (emphasis added).

An approach that conflates the two inquiries[12] contradicts Feldman. In Feldman, the Court held that section 1257 did not bar Feldman's general constitutional challenge but expressly refused to "reach the question of whether the doctrine of res judicata foreclose[d] litigation on these elements of [the plaintiffs'] complaints." 460 U.S. at 487-88; accord Long v. Shorebank Dev. Corp., 182 F.3d 548, 554-55 (7th Cir. 1999) ("Because the Rooker-Feldman doctrine is jurisdictional in nature, its applicability must be determined before considering the defendants' arguments regarding the applicability of res

------

[12] See, e.g., Cruz v. Melecio, 204 F.3d 14, 21 n.5 (1st Cir. 2000) ("Only a state court adjudication that itself has preclusive effect can bring the Rooker-Feldman doctrine into play."); Moccio v. N.Y. State Office of Ct. Admin., 95 F.3d 195, 199 (2d Cir. 1996) ("[W]here the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by Rooker-Feldman.") (citing Texaco, 784 F.2d at 1144-45); Davis v. Bayless, 70 F.3d 367, 376 (5th Cir. 1995) ("[O]ur Circuit has not allowed the Rooker-Feldman doctrine to bar an action in federal court when that same action would be allowed in the state court of the rendering state."); cf. David Vincent, Inc. v. Broward County, Fla., 200 F.3d 1325, 1332 (11th Cir. 2000) (refusing to apply Rooker-Feldman, based on its conclusion that "the Florida courts' denial of [a] temporary injunction is not a final or conclusive judgment on the merits of the [plaintiffs'] First Amendment case"); but see Charchenko v. City of Stillwater, 47 F.3d 981, 983 n.1 (8th Cir. 1995) (suggesting that Rooker-Feldman "is broader than claim and issue preclusion because it does not depend on a final judgment on the merits").

judicata.").

Based on the above analysis, we reject plaintiffs' contention that the absence of a full and fair opportunity to litigate a claim in the prior state-court proceeding bars application of the Rooker-Feldman doctrine.

> 3.    *Whether* Rooker-Feldman *Applies in This Case Despite the Fact That Kenmen Engineering, Mr. Miles, and Mr. Menz Were Not Named Parties in the Oklahoma State-Court Judgment.*

We have previously held that the Rooker-Feldman doctrine should not be applied against "non-parties." See Johnson v. Riddle, 305 F.3d 1107, 1116 (10th Cir. 2002); Rodrigues, 226 F.3d at 1109-10 (citing cases); see generally LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW 594 & n.59 (3d ed. 2000) (citing cases). This general rule follows from Rooker-Feldman's underlying premise: the doctrine prohibits suits in lower federal court that would be, in substance, appellate review of state-court judgments. See 28 U.S.C. § 1257. Because "judgments" only decide rights of "parties,"[13] a person would generally have no basis (or right) to appeal a judgment to which that person was not a party.

Kenmen Engineering, Mr. Menz, and Mr. Miles argue that Rooker-Feldman's prohibition does not apply to their claims because they were not named

---

[13] See BLACK'S LAW DICTIONARY 586 (6th ed. 1991) (defining "judgment" as the "final decision of the court resolving the dispute and determining the rights and obligations of the parties") (emphasis added).

parties in the Oklahoma state court's judgment. We disagree.

As an initial matter, we reject this argument's factual predicate. It is true that Miles Specialty was the only named defendant in the Oklahoma state court's March 22, 1999 order. At the same time, Kenmen Engineering, Mr. Menz, and Mr. Miles were all clearly within the ambit of the Oklahoma state court's injunction.[14] The court directed its March 22, 1999 order to "Defendant Miles Specialty Company, Inc [sic], by and through its officers, agents, servants, employees, attorneys, or representatives." March 22, 1999 Dist. Ct. Order at ¶ 2. The record indicates that Miles was an "officer" of Miles Specialty, and he appeared on behalf of Miles Specialty throughout the Oklahoma state-court proceedings. Further, by virtue of the plaintiffs' joint venture, we have no doubt that Kenmen Engineering[15] and Menz were "agents" of Miles Specialty. Accord Rollins v. Rayhill, 191 P.2d 934, 938 (Okla. 1948) ("A joint adventure involves not only joint profits sought through the enterprise but a community of interest in and power over the property involved, wherein each member acts for himself as a

---

[14] Indeed, plaintiffs' contention contradicts their characterization of the injury for which they seek damages. On the one hand, Kenmen Engineering, Mr. Menz, and Mr. Miles argue that Rooker-Feldman does not bar their claims because they were not named parties to the Oklahoma state-court judgment. On the other hand, Kenmen Engineering, Mr. Menz, and Mr. Miles argue that they were forced, by the Oklahoma state court's injunction, to sell magnesium in which each held an economic interest.

[15] As previously mentioned, Kenmen Engineering is a partnership composed of two partners: Miles and Menz.

principal and as <u>agent for the other member or members</u>.") (emphasis added). Semantics aside, whatever limitation "non-party" status might place on <u>Rooker-Feldman</u>'s scope, we cannot accept that Kenmen Engineering, Miles, and Menz were non-parties to the Oklahoma state-court judgment for purposes of <u>Rooker-Feldman</u>'s jurisdictional bar.

Focusing on the <u>relief</u> sought by plaintiffs reinforces the necessity of this conclusion. <u>Cf.</u> <u>Rodrigues</u>, 226 F.3d at 1108 (considering the nature of the suit in determining whether to apply <u>Rooker-Feldman</u> to a plaintiff who was not a party to the state-court proceeding at issue); <u>accord</u> <u>Lemonds</u>, 222 F.3d at 495 (recognizing that focusing <u>solely</u> on the identity of the parties "confuses the <u>Rooker-Feldman</u> doctrine with principles of res judicata"). In this case, all plaintiffs join in seeking damages incurred as a result of complying with the Oklahoma state court's injunction. Clearly, plaintiffs would not have standing to bring this suit absent the Oklahoma state-court judgment. <u>Cf.</u> <u>Facio</u>, 929 F.2d at 545 (using standing analysis in considering claims under <u>Rooker-Feldman</u>); <u>accord</u> <u>Lemonds</u>, 222 F.3d at 495 (asking "whether the federal plaintiff's interest in having a state rule set aside is inseparable from his interest in upsetting a particular state court judgment based on that rule") (citing <u>Feldman</u>, 460 U.S. at 482-86). Thus, unlike <u>Rodrigues</u>, plaintiffs here "<u>do</u> seek review of a final state court judgment in a particular case." <u>Rodrigues</u>, 226 F.3d at 1108 (citing

-25-

<u>Feldman</u>, 460 U.S. at 486) (emphasis added).

We therefore hold that <u>Rooker-Feldman</u> bars plaintiffs' federal-court claims even though Kenmen Engineering, Miles, and Menz were not named parties in the Oklahoma state court's judgment.

D.    <u>Plaintiffs' Defamation Claim</u>

We also lack jurisdiction over plaintiffs' defamation claim. First, there is no federal basis for this claim. Mere injury to reputation cannot support a claim under 42 U.S.C. § 1983. <u>See</u> <u>Paul v. Davis</u>, 424 U.S. 693, 712 (1976) ("[P]etitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."); <u>Setliff v. Mem'l Hosp. of Sheridan County</u>, 850 F.2d 1384, 1396 (10th Cir. 1988) ("'[R]eputation alone, apart from some more tangible interests such as employment,' is not subject to the requirements of due process.") (citing <u>Paul</u>, 424 U.S. at 701). Second, we may not consider plaintiffs' defamation claim under Oklahoma state law. All parties to this suit are Oklahoma domiciliaries and thus, we may not exercise jurisdiction under 28 U.S.C. § 1332. Therefore, because we lack subject-matter jurisdiction over plaintiffs' constitutional and preemption claims, we also lack jurisdiction over their defamation claim.

## III. Conclusion

We hold that the district properly concluded that the <u>Rooker-Feldman</u> doctrine divested it of subject-matter jurisdiction over the plaintiffs' claims. Accordingly, we AFFIRM the district court's dismissal of the case for lack of jurisdiction.