**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 25 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOLENE MCKEEL and
GERALD MCKEEL,

     Plaintiffs - Appellants,

v.

THE STATE OF COLORADO,

     Defendant - Appellee.

No. 02-1303
(D.C. No. 02-Z-104)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

Plaintiffs-Appellants Jolene McKeel (Baby Girl's mother) and Gerald McKeel (Baby Girl's grandfather) argue on appeal that it is unconstitutional for Colorado to allow the final termination of parental rights to be decided by a judge instead of a jury. The plaintiffs-appellants, however, come before us late in the procedural history of their case. They failed to comply with an "abuse and neglect" plan to change the way they cared for their Baby Girl, and the Colorado

---

[*] This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

state courts affirmed the termination of their parental rights.[1]  We find that the

exercise of federal jurisdiction over this case is barred by application of the

Rooker-Feldman doctrine because plaintiffs-appellants seek, inter alia, to

challenge on appeal the final decision of the Colorado state courts regarding

custody of the Baby Girl.


## BACKGROUND

Because we dismiss plaintiffs-appellants' claim for lack of jurisdiction, we

describe the facts of their case only briefly.

In the Colorado state system, first there must be a determination whether a

child is neglected or abused such that the termination of parental rights would be

appropriate.  Both parties agree there is a right to a jury at this stage of the

proceedings, and we accept that for purposes of this appeal since it is not

contested.  After the finding of facts to support the termination of parental rights

is made, the actual execution of the termination may be suspended for some

period of time to allow parents an opportunity to comply with a treatment plan.  If

the parents do not follow the treatment plan, the suspended judgment is then

enforced by a court and official termination of parental rights is entered.  See,

---

[1]  Plaintiffs-Appellants have appealed unsuccessfully to the Colorado
Supreme Court, but it is not clear whether they petitioned for a writ of certiorari
from the U.S. Supreme Court.

e.g., L.L. v. People, 10 P.3d 1271, 1275 (Colo. 2000) (en banc) (describing the procedure under Colorado law). At this termination proceeding, there is no right to a jury and the matter is decided by the court. Colo. Rev. Stat. § 19-3-602(4).

On July 13, 1994, the State District Court for Mesa County, Colorado issued an "emergency custody and pick-up order" for the Baby Girl at issue in the McKeels' case. Plaintiffs-Appellants[2] were scheduled for an "abuse and neglect" proceeding under the Colorado Children's Code in Colorado state courts and they were given notice that an unfavorable disposition on the facts might result in the termination of parental rights. See generally Colo. Rev. Stat. §§ 19-3-502, 19-3-503, 19-3-505, and 19-3-507. The McKeels stipulated to their abuse and neglect of the Baby Girl, however, so no trial occurred at this stage of the proceedings. Plaintiffs-Appellants were permitted to maintain revokable custody of the Baby Girl on the basis of a "corrective treatment plan" entered into with the state, but they ultimately failed to comply with its provisions.

On December 6, 1995, a Colorado state court judge found plaintiffs-appellants in violation of the treatment plan and entered the order terminating the

_____

[2] We use the term "plaintiffs-appellants" throughout this opinion for both McKeel adults. Jolene McKeel was party to all proceedings in state court and her father intervened at the final disposition to present another option to the court in awarding custody to him when it was clear his daughter would lose her parental rights.

McKeels' parental rights.[3] Plaintiffs-Appellants appealed through the Colorado state court system, but provide no evidence they petitioned for a writ of certiorari from the U.S. Supreme Court.

On January 17, 2002, nearly five years after plaintiffs-appellants were denied relief by the Colorado Supreme Court, they filed suit in federal district court to attack Colorado's statute denying them a jury trial on the actual entry of the termination order. As of the time of the federal district court proceedings, the Baby Girl was almost eight years old and had been cared for by people other than the plaintiffs for more than six years. In the hearing before the federal district court, there was no answer to the judge's inquiry why the plaintiffs had waited so long to file their case.

The federal district court ruled from the bench to dismiss the suit. Throughout the hearing generally, the district court was troubled by why this case was in federal court and not in state court. The court, though, seemed to suggest three possible bases for its decision. First, the court said it did not have jurisdiction to restore the child to the plaintiffs because that was a matter for the state courts. Second, the court concluded that the Colorado statute denying a jury trial at the termination proceeding did not violate the federal constitution. Third,

---

[3] Any rights Gerald McKeel had were terminated by extension of the termination of his daughter's rights to the child. People ex rel. J.W.W., 936 P.2d 599, 601 (Colo. Ct. App. 1997).

- 4 -

the court appeared to conclude that the plaintiffs had waived their claim for a jury determination when they knowingly entered into a stipulation at the first stage that a finding of abuse and neglect could be entered against them without a trial.

On appeal, the McKeels petition to have Colorado Revised Statute Section 19-3-602(4)[4] declared both facially unconstitutional, and unconstitutional as applied, rendering the state's previous termination proceedings "null and void." Plaintiffs-Appellants ask for Baby Girl to be "restored to" them, or, in the alternative, for a "jury trial [on] the subject termination proceedings."

We DISMISS the McKeels' appeal for lack of jurisdiction because application of the Rooker-Feldman doctrine bars their claim.

**DISCUSSION**

We review all issues of jurisdiction and law de novo. See, e.g., Elder v. Holloway, 510 U.S. 510, 516 (1994); Dang v. UNUM Life Ins. Co. of Am., 175 F.3d 1186, 1189 (10th Cir. 1999).

Pursuant to 28 U.S.C. § 1257, "federal review of state court judgments can be obtained only in the United States Supreme Court" and, of course, review is limited to issues of federal law. Kenmen Eng'g v. City of Union, 314 F.3d 468,

---

[4] Colo. Rev. Stat. § 19-3-602(4) reads: "There shall be no right to a jury trial at proceedings held to consider the termination of a parent-child legal relationship."

473 (10th Cir. 2002) (quoting <u>Kiowa Indian Tribe of Okla. v. Hoover</u>, 150 F.3d 1163, 1169 (10th Cir. 1998)).

In <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), the Supreme Court first held that the grant of statutory jurisdiction to the Court to review state court judgments could provide an independent basis for prohibiting collateral attack on state court judgments in the lower federal courts. The plaintiff in <u>Rooker</u> sought to have the judgment of a circuit court in Indiana, which had been affirmed by the Indiana Supreme Court, declared null and void in the lower federal courts as a violation of its federal constitutional right to contract. <u>Id</u>. at 414.

But the U.S. Supreme Court wrote:

It affirmatively appears from the bill that the judgment was rendered in a cause wherein the [state] circuit court had jurisdiction of both the subject-matter and the parties, that a full hearing was had therein, that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the state on an appeal by the plaintiffs. <u>If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction.</u> If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding [only to the U.S. Supreme Court].

<u>Id</u>. at 415 (citation omitted and emphasis added).

Years later, the Supreme Court reaffirmed <u>Rooker</u>'s central holding that federal district courts do not have jurisdiction to hear challenges to the validity of state court decisions appealable from the state system to the U.S. Supreme Court.

- 6 -

<u>Dist. of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476 (1983). As the Supreme Court has articulated since, the effect of <u>Rooker</u>-<u>Feldman</u> is to preclude "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." <u>Johnson v. De Grandy</u>, 512 U.S. 997, 1005-06 (1994); <u>Kenmen</u>, 314 F.3d at 473.

Plaintiff-Appellants essentially admit in their supplementary briefing that <u>Rooker</u>-<u>Feldman</u> may bar their challenge to the Colorado statute as applied. They argue, though, that their claim should be considered a challenge to the Colorado statute both as applied and more generally. They rely for this argument on a phrase from the <u>Feldman</u> case enabling a "general challenge" to a state statute to survive application of the <u>Rooker</u>-<u>Feldman</u> doctrine.

Under <u>Feldman</u>, a "general challenge" to the constitutionality of a statute may remain within a federal court's jurisdiction even after application of the <u>Rooker</u>-<u>Feldman</u> doctrine. <u>Feldman</u>, 460 U.S. at 482-83; <u>accord</u> Richard H. Fallon, Daniel J. Meltzer, and David L. Shapiro, <u>Hart and Wechsler's The Federal Courts and The Federal System</u> 1502 (4th ed. 1996). The <u>Feldman</u> Court wrote that there was a distinction between as-applied challenges to statutes "seeking review in a federal district court of a state court's final judgment in a . . . matter"

- 7 -

and general challenges "challenging the validity of a state . . . rule." Feldman, 460 U.S. at 483-84.

It is not clear what general challenge plaintiffs-appellants may have made to the Colorado statute aside from their as-applied challenge. They employed the word "facial" just once in their brief on appeal in an introductory paragraph and present no broader argument against the Colorado statute distinct from the facts of their case as applied.[5] Although we do not believe that the McKeels have in fact asserted a general challenge separate from their challenge to the statute as applied, we may, nonetheless, easily determine that any facial claim the McKeels may have asserted would be barred by the "inextricably intertwined" test. Federal courts may not hear claims raised in the same suit as an issue barred by Rooker-Feldman if the claims are "inextricably intertwined" with the state court judgment. Kenmen, 314 F.3d at 475 (citing Feldman, 460 U.S. at 483 n.16).

A claim asserted in federal court is barred as "inextricably intertwined" with the state court judgment in which the case is rooted unless it falls into one of two categories. The first category consists of cases in which "the party does not request that the federal court upset a prior state-court judgment applying [the

_____

[5] Traditionally, a party argued in an as-applied challenge that "a statute cannot be applied to her because its application would violate her personal constitutional rights." Richard H. Fallon, As-Applied and Facial Challenges and Third-Party Standing, 113 Harv. L. Rev. 1321, 1321 (2000). By contrast, a "facial" attack asserted that "a statute is more generally invalid" and should be struck down in all its applications. Id.; id. at 1326.

contested] law against the party, and . . . the prior state-court judgment did not actually decide that the state law at issue was facially constitutional." Kenmen, 314 F.3d at 476 (citations and emphasis omitted). The second category consists of cases in which "a party may challenge state procedures for enforcement of a judgment[] where consideration of the underlying state-court decision is not required." Id. (citation omitted).

The McKeels' prayer on appeal was that we declare the Colorado statute to be unconstitutional, thereby rendering the state's previous termination proceedings "null and void" and "restor[ing]" the Baby Girl to them, or, in the alternative, granting a "jury trial [on] the subject termination proceedings." The McKeels' claim thus falls into neither of the two categories that might exempt it from being barred under the "inextricably intertwined" test for the Rooker-Feldman doctrine. Under the first category, the McKeels specifically request that the federal courts upset a prior state-court judgment applying Colorado's parental termination law against them. The McKeels' claim fails under the second category because we would be forced to consider the underlying Colorado state court judgment if we were to declare it "null and void" for the Baby Girl to be returned to the McKeels or for the McKeels to receive a new trial on the termination of their parental rights. Thus, even if the plaintiffs-appellants are raising a facial challenge, under the standard of the inextricably intertwined test

for separate claims, no claim survives application of the <u>Rooker</u>-<u>Feldman</u> doctrine's bar on federal court jurisdiction.

**CONCLUSION**

Accordingly, we hold that the <u>Rooker</u>-<u>Feldman</u> doctrine bars the McKeels' case from federal court and DISMISS the case for lack of jurisdiction.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge