**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 24 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK CRUTCHFIELD,

    Plaintiff-Appellant,

v.

COUNTRYWIDE HOME LOANS and
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

    Defendants-Appellees.

No. 03-6311

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 03-CIV-110-F)**

---

Mark Crutchfield, Brooklyn, New York, for Plaintiff-Appellant.

John F. Fischer, (Leif Swedlow with him on the brief) Andrews Davis, Oklahoma
City, Oklahoma, for Defendants-Appellees.

---

Before Chief Judge **TACHA** , **KELLY** , and **McCONNELL** , Circuit Judges.

---

**McCONNELL** , Circuit Judge.

---

The Plaintiff, Mark Crutchfield, appeals the district court's award of summary judgment to the Defendants, Countrywide Home Loans ("Countrywide") and Mortgage Electronic Registration Systems, Inc. ("MERS"). Mr. Crutchfield seeks a declaratory judgment from the district court that he lawfully rescinded his assumption of his mother's mortgage pursuant to the Truth in Lending Act ("TILA"). The district court found that there were no facts suggesting he actually assumed his mother's mortgage or that Countrywide extended him credit. Without evidence of an assumption or a consumer credit transaction, the rescission provisions of TILA do not apply. Consequently, the district court found there were no genuine issues of material fact concerning Mr. Crutchfield's power to rescind the mortgage, and granted summary judgment in favor of the Defendants. The presence of a state court default judgment foreclosing on the mortgage ousts our subject matter jurisdiction under the *Rooker-Feldman* doctrine. Therefore, the District Court order granting summary judgment to the defendants is **VACATED** for want of subject matter jurisdiction to address the merits of Mr. Crutchfield's alleged rescission.

**I.**

Estella Crutchfield, the Plaintiff's mother, purchased a house in Oklahoma City on January 31, 2001. Mr. Crutchfield provided the down payment and executed a memorandum of understanding with his mother providing that full

interest in the house would pass to him. Mrs. Crutchfield executed a promissory note and a real estate purchase money mortgage to acquire the property. Countrywide, through MERS, took a lien against the property.

On March 3, 2001, Mrs. Crutchfield died. On November 4, 2001, the executrix of her estate executed a deed conveying the property subject to existing mortgages, liens, taxes, grants, charges, and encumbrances to Mr. Crutchfield. Mr. Crutchfield contacted Countrywide on November 29, 2001 to inquire about assuming the loan, although he never signed a written assumption agreement. In a letter dated December 19, 2001, Countrywide notified Mr. Crutchfield that it had received the documentation to change its record of ownership and advised him that the due date of the mortgage would remain the same. After March of 2002, however, Mr. Crutchfield ceased to make any mortgage payments on the home. Subsequently, MERS brought an *in rem* foreclosure action in the District Court for Oklahoma County on July 30, 2002. MERS sent a copy of the summons and the complaint to a mailbox rented by Mr. Crutchfield in New York City, but he did not appear in the foreclosure proceeding.

In a letter dated October 16, 2002, Mr. Crutchfield purported to notify both Countrywide and MERS that he was exercising his right to rescission pursuant to TILA. He did not, however, tender the principal or any back interest to Countrywide or MERS. On November 14, 2002, Mr. Crutchfield commenced a

federal action seeking a declaratory judgment that he had rescinded his assumption of the mortgage pursuant to TILA, thus removing the lien on the property, and the return of any money paid to the Defendants. Mr. Crutchfield did not seek statutory damages under TILA. On November 13, 2002, the Oklahoma court entered a default judgment foreclosing on the mortgage.

On July 7, 2003 the federal district court ruled on the Defendants' first motion for summary judgment. The Defendants argued that the state court default judgment precluded Mr. Crutchfield from bringing his TILA claim in federal court pursuant to res judicata. Mr. Crutchfield replied that service in the state foreclosure action had been improper and that the lack of privity between MERS and Countrywide prevented preclusion of his TILA claim against Countrywide. The district court denied the motion for summary judgment. The court held that the Oklahoma default judgment was not void for lack of proper service, but it accepted Mr. Crutchfield's argument that there was insufficient evidence of the relationship between MERS and Countrywide to warrant summary judgment as a matter of res judicata.

On October 28, 2003 the district court ruled on the Defendants' second motion for summary judgment. The Defendants argued that they did not enter into any transaction with Mr. Crutchfield that would permit rescission under TILA. Mr. Crutchfield responded that there was sufficient evidence of a

consumer credit transaction to survive summary judgment. The district court awarded summary judgment to the Defendants, finding that there was no evidence of either a consumer credit transaction or a written assumption. Without evidence of one of these transactions, Mr. Crutchfield would not have rescission rights under TILA.

On February 6, 2004 Mr. Crutchfield filed a timely motion in Oklahoma state court to vacate the default judgment on the ground that MERS did not have standing to sue him and that service was defective. The state court denied this motion on March 8, 2004. Ever valiant, Mr. Crutchfield filed a motion to reconsider the state court's refusal to vacate on March 22, 2004, which the state court denied on May 28, 2004. Mr. Crutchfield has appealed this ruling to an Oklahoma appellate court, and has moved in state trial court for a temporary restraining order to prohibit sale of the property pending his state court appeal.

## II.

On this appeal the Defendants argue, for the first time, that the *Rooker-Feldman* doctrine should have precluded the federal district court from exercising subject matter jurisdiction. Because subject matter jurisdiction is integral to our power to hear any case, it is permissible for the Defendants to invoke the *Rooker-Feldman* doctrine for the first time on appeal. *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 706 (10th Cir. 2004).

The *Rooker-Feldman* doctrine is the product of two Supreme Court cases interpreting 28 U.S.C. § 1257(a). Section 1257(a) provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." The *Rooker-Feldman* doctrine is the negative inference of §1257(a): if appellate review of state court judgments is vested in the United States Supreme Court, it follows that review is *not* vested in lower federal courts. Section 1257(a) thus implicitly deprives lower federal courts of subject matter jurisdiction to entertain cases that would entail review of decisions rendered by state courts. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–416 (1923) the Supreme Court held that lower federal courts may not hear claims actually decided by a state court. Sixty years later in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983), the Court extended the holding of *Rooker* to claims that are "inextricably intertwined" with a state court judgment. By confining state cases to state appellate systems, the *Rooker-Feldman* doctrine preserves the state plaintiff's forum choice. More importantly, it respects the values of federalism implicit in our parallel system of independent state and federal courts, with the United States Supreme Court at the apex of both—a structure established by the first Judiciary Act of 1789 and adhered to ever since.

The *Rooker-Feldman* doctrine prohibits "a party losing in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998), *quoting Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). To determine whether a federal plaintiff's claim is inextricably intertwined with a state court judgment we must pay close attention to the relief the plaintiff seeks. *See Kenman Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002). While a litigant may be able to make a federal claim appear unrelated to a state court judgment through artful pleading, the requested relief can quickly reveal whether *Rooker-Feldman* applies. Where a plaintiff seeks a remedy that would "disrupt or undo" a state court judgment, the federal claim is inextricably intertwined with the state court judgment. *Id.* at 478.

There are two issues potentially barred by *Rooker-Feldman* in this case: Mr. Crutchfield's claim that notice was defective and his request for a declaratory judgment that he rescinded the mortgage. We analyze these issues in turn.

## A.

Mr. Crutchfield appeals the district court's ruling that notice in the state court foreclosure action was proper. *Rooker-Feldman* bars our subject matter jurisdiction to entertain this argument. The District Court for Oklahoma County held that Mr. Crutchfield was personally served with a summons in the manner required by law and that the court "approves the service as meeting the statutory requirements." Aplt.App.50. In response to the Defendants' first motion for summary judgment in federal court, Mr. Crutchfield contended that the state court's holding was contrary to Oklahoma's notice statute. This was, in substance, a request that the federal district court overturn the judgment of the state court, which the federal court may not do. When a state court actually decides an issue, *Rooker-Feldman* prevents federal courts from hearing an appeal of that claim. *Rooker*, 263 U.S. at 415-16. Allowing parallel litigation on the same point of law would invite chicanery from litigants. For example, Mr. Crutchfield is attempting to maintain simultaneous appeals on the notice issue in state and federal court, creating the danger of a federal court judgment that calls into question the judgment of the state court. Section 1257(a) eliminates this prospect by requiring us to confine Mr. Crutchfield's notice of appeal to the state court system. He litigated the issue in state court, lost, and has appealed to the state appellate court. If he loses there, he has a right to petition the United States

Supreme Court for certiorari. He may not pursue a collateral attack on the state court decision in the lower federal courts.

**B.**

Unlike the adequacy of notice, the state court did not actually decide whether Mr. Crutchfield had a right to rescission under TILA. Consequently, we must determine whether that claim is inextricably intertwined with the state court judgment. The effect of the state court judgment was to foreclose the mortgage on the home that Mr. Crutchfield inherited from his mother. If he were to receive his requested relief, the district court would issue a declaratory judgment that he had validly rescinded the mortgage and thus removed the lien on the property. Mr. Crutchfield is thus asking a federal court to do precisely what *Rooker-Feldman* prohibits: to undo the effect of the state court judgment. He tells us as much when he characterizes the state court judgment as "a judicial nullity." Aplt.Rep.Br. 6. Consequently, Mr. Crutchfield's request for a declaratory judgment is inextricably intertwined with the state court judgment. [1] Unless this case falls within an exception to the *Rooker-Feldman* doctrine for general

---

[1]One of Mr. Crutchfield's requests for relief is the return of his mortgage payments. He bases this claim on 15 U.S.C. 1635(b), a provision of TILA, which provides, "When an obligor exercises his right to rescind. . . . [w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise." Because this relief depends on a finding of rescission, a request for return of his mortgage payments is also inextricably intertwined with the state court judgment.

constitutional claims that are otherwise inextricably intertwined with state court judgments, we must dismiss the case for want of jurisdiction. [2]

There is an exception to the *Rooker-Feldman* doctrine for general constitutional challenges to state laws. As Justice Brennan explained in *Feldman*, constitutional challenges to state statutes or rules are not attacks on state court judgments. *Feldman*, 460 U.S. at 486. Consequently, § 1257(a) does not bar lower federal courts from hearing general claims that state laws are unconstitutional, even if the requested relief is inextricably intertwined with a state court judgment. In contrast, only the Supreme Court can hear "challenges to state court decisions in particular cases . . . even if those challenges allege that the state court's action was unconstitutional." *Id.*

If Mr. Crutchfield were making a general allegation that one of the Oklahoma statutes or procedures relevant to this case is unconstitutional, he might be free of the bar imposed by the *Rooker-Feldman* doctrine. However, he confines his arguments to particularized, statutory claims regarding defective notice and TILA violations. He does not contend that the Oklahoma laws under which MERS obtained foreclosure are constitutionally defective. Mr.

---

[2]Mr. Crutchfield contends that there is an additional exception to *Rooker-Feldman* when the state action does not require compulsory counterclaims. He cites no cases to support this claim, and indeed there is nothing in our *Rooker-Feldman* doctrine to suggest that state compulsory counterclaim rules have any effect on federal subject matter jurisdiction.

Crutchfield's failure to raise a constitutional challenge to a general law or procedure means that this exception to *Rooker-Feldman* does not apply.

## III.

Mr. Crutchfield is using the federal court to challenge the judgment of an Oklahoma state court. The *Rooker-Feldman* doctrine removes federal subject matter jurisdiction in such situations and restricts Mr. Crutchfield's appeals to the Oklahoma state court. For this reason the District Court order granting summary judgment to the defendants is vacated and the appeal is **DISMISSED** for want of subject matter jurisdiction.