**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 1 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SHIRLEY A. ROBERTS,

Plaintiff-Appellant,

v.

DEBORAH HARTZ, Secretary of the
New Mexico Children, Youth, and
Families Department; MARCI
KENNAI, Head of Child Protective
Services for the New Mexico
Children, Youth, and Families
Department; JOHN and JANE DOE,
unknown foster/adoptive parents;
THOMAS KUKER, Special Agent in
Charge, Albuquerque Division of the
F.B.I.,

Defendants-Appellees.

No. 03-2054
(D.C. No. CIV-01-1262 LH/WWD)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **MURPHY** , and **TYMKOVICH** , Circuit Judges.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. [1]

Pursuant to 42 U.S.C. § 1983 and certain other federal statutes enumerated in her complaint, plaintiff-appellant Shirley A. Roberts filed a complaint seeking declaratory and injunctive relief pertaining to custody proceedings in New Mexico state district courts involving her granddaughter (the "Child"). To support her claims for injunctive and declaratory relief, Roberts claimed that state and federal officials have violated her procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution by wrongfully depriving her of custody of the Child. [2] In addition, Roberts sought a declaratory judgment declaring that Chapter 32A of the New Mexico Statutes (the "Children's Code")

---

[1] We previously directed the parties to file briefs addressing the jurisdictional issue of whether Roberts filed this appeal in a timely manner. Having considered the briefs submitted by the parties, we conclude that Roberts filed this appeal in a timely manner. Specifically, because Roberts named an officer of the United States as a defendant, she had sixty days to file her notice of appeal, *see* Fed. R. App. P. 4(1)(B), and the sixty-day period began to run on December 20, 2002 when the district court entered its order granting in part Roberts' motion for reconsideration. *See* Aplt. App. at 271-75. Roberts filed her notice of appeal within the sixty-day period as it was filed on February 18, 2003, the sixtieth day.

[2] In her complaint, Roberts also asserted claims against defendants under the First and Ninth Amendments, but she has abandoned those claims in this appeal.

-2-

and New Mexico Children's Court Rule 10-108 are unconstitutional. Finally, Roberts sought mandamus relief in the form of an order directing the Federal Bureau of Investigation to investigate and stop what she characterized as defendants' unlawful detention of the Child.

The district court dismissed Roberts' complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, concluding that: (1) the *Rooker-Feldman* [3] doctrine bars Roberts from challenging the orders and judgments entered in the state-court proceedings, *see* Aplt. App. at 166-68; (2) Roberts lacks standing to pursue her constitutional challenges, *id.* at 168-74; and (3) Roberts' claim for mandamus relief against the FBI is barred by the doctrine of sovereign immunity, *id.* at 174-75. Having conducted the required de novo review of the district court's dismissal order, *see Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002), we conclude that the district court properly dismissed Roberts' complaint for lack of subject matter jurisdiction. We therefore affirm.

---

[3] *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983) (restricting federal court review of state court proceedings).

## I.

In February 1997, a New Mexico district court appointed Roberts as guardian of the Child "until further Order of this Court" (the "Guardianship Case"), and the appointment was made with the consent of the Child's mother (Roberts' daughter). *See* Aplt. App. at 15. In August 1997, the Child's mother filed a motion in the Guardianship Case to revoke the guardianship and have custody of the Child returned to her. *See* Aplee. Supp. App. at 1-13. In October 1998, the New Mexico district court entered an order awarding the mother primary physical custody and sole legal custody of the Child "temporarily pending a second [advisory] opinion" which could be obtained at Roberts' expense. *See* Aplt. App. at 46, 54. Roberts never obtained a second advisory opinion, however, and, in July 2001, the New Mexico district court dismissed the Guardianship Case without prejudice for failure to prosecute. *Id.* at 57.

In the meantime, following the transfer of custody back to the mother, defendant New Mexico Children, Youth, and Families Department ("CYFD") obtained legal and physical custody of the Child pursuant to an order of a New Mexico district court. In addition, the CYFD initiated judicial proceedings to terminate the mother's parental rights based on allegations that she was neglecting the Child (the "Termination Case"). In March 2000, Roberts moved to intervene in the Termination Case, and the New Mexico district court entered an

interim order regarding her motion in June 2000. *See* Aplee. Supp. App. at 15-16, 43. In the interim order, the court: (1) took Roberts' motion to intervene under advisement; (2) ordered Roberts to cooperate with the "home study process"; (3) ordered Roberts to contact a psychologist; and (4) stated that if Roberts did not establish a permanent residence and contact a psychologist by June 25, 2000 her motion to intervene would be denied. *Id.* at 15-16.

In March 2001, the New Mexico district court entered an order denying Roberts' motion to intervene and terminating the mother's parental rights. *Id.* at 39-41. In separate adoption proceedings to which Roberts was not a party (the Adoption Case), the Child was subsequently placed with adoptive parents, the Doe defendants, and the Child is apparently in their custody at the present time.

## II.

### 1. *Rooker-Feldman* Doctrine.

"The *Rooker-Feldman* doctrine is a jurisdictional prohibition." *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 705 (10th Cir. 2004) (en banc). We have summarized the doctrine as follows:

> Under 28 U.S.C. § 1257, "federal review of state court judgments can be obtained only in the United States Supreme Court." *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998) (citing *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 476 . . . (1983)). As a result, the *Rooker-Feldman* doctrine prohibits a lower federal court from considering claims actually decided by a state court, *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16 . . . (1923), and claims "inextricably intertwined" with a prior state-court

judgment. *Feldman*, 460 U.S. at 483 n. 16 . . . . In other words, *Rooker-Feldman* precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 . . . (1994).

*Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002).

To apply the "inextricably intertwined" standard, "we must ask whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* at 476 (quotation omitted). "In other words, we approach the question by asking whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*." *Id.* (footnote omitted). "If it did, *Rooker-Feldman* deprives the federal court of jurisdiction; if it did not, *Rooker-Feldman* provides no bar." *Pittsburg County*, 358 F.3d at 707.

We have also recognized, however, that "the *Rooker-Feldman* doctrine should not be applied against 'non-parties.'" *Kenmen Eng'g*, 314 F.3d at 480.

This general rule follows from *Rooker-Feldman's* underlying premise: the doctrine prohibits suits in lower federal court that would be, in substance, *appellate* review of state-court judgments. *See* 28 U.S.C. § 1257. Because "judgments" only decide rights of "parties," a person would generally have no basis (or right) to appeal a judgment to which that person was not a party.

*Id.* (footnote omitted).

The district court concluded that the *Rooker-Feldman* doctrine barred the bulk of Roberts' claims because she was asking the court "either to review the decisions of the state court or order some action in contravention of the state court's rulings [citing Roberts' complaint at ¶¶ A, B, D, & E], or to make rulings on matters that are inextricably intertwined with those state court decisions [citing Roberts' complaint at ¶¶ C, G, H, I, & J]." Aplt. App. at 167. Having examined Roberts' complaint, we agree with the district court that, with the exception of the constitutional challenges discussed below, which are exempt from the *Rooker-Feldman* doctrine, all of Roberts' claims against the state defendants were either actually decided in the state-court proceedings or are inextricably intertwined with the state-court orders and judgments.

We also reject Roberts' argument that the district court erred in applying the *Rooker-Feldman* doctrine because she was never a party to the Termination Case.[4] Contrary to Roberts' contentions, the fact the New Mexico district court denied her motion to intervene in the Termination Case is not determinative of her status in that case for purposes of the *Rooker-Feldman* doctrine. Instead, the

_____

[4] We note that Roberts is also relying on the fact that she was not a party to the Adoption Case in order to defeat application of the *Rooker-Feldman* doctrine. *See* Aplt. Br. at 25. The fact that Roberts was not a party to the Adoption Case does not affect the applicability of the *Rooker-Feldman* doctrine, however, as the Termination Case was the determinative state-court proceeding for adjudicating Roberts' custody rights under New Mexico law, and we conclude that she was a party to the Termination Case for purposes of the *Rooker-Feldman* doctrine.

controlling factor is that Roberts attempted to intervene in the Termination Case, and the New Mexico district court refused to allow her to intervene, concluding that she had no right under New Mexico law to participate in the Termination Case. *See* Aplees. Supp. App. at 40-41. At that point, Roberts' only remedy in terms of contesting the child-custody proceedings was to file an appeal regarding the Termination Case in a New Mexico appellate court, which she failed to do. Instead, Roberts filed a claim in the district court, in essence requesting federal court review of a state court decision. The *Rooker-Feldman* doctrine, however, expressly forbids the district court or this court from considering claims actually decided by a state court. *See Wright v. Tackett*, 39 F.3d 155, 157 (7th Cir. 1994) (holding that *Rooker-Feldman* doctrine barred plaintiff from filing constitutional claims in federal district court relating to state-court foreclosure actions where "[i]n essence, [plaintiff was asking] the federal district court to review the state court's denial of his requests to intervene in the foreclosure actions").

**2. Constitutional Challenges.**

Although the *Rooker-Feldman* doctrine disposes of the bulk of Roberts' claims against the state defendants, her challenge to the constitutionality of New Mexico's Children's Code and New Mexico's Children's Court Rule 10-108 remains because "discrete general challenge[s]" to the constitutionality of state laws are not barred by the *Rooker-Feldman* doctrine. *Johnson v. Rodrigues*

*(Orozco)* , 226 F.3d 1103, 1108-09 (10th Cir. 2000). Roberts claims that these provisions "are facially unconstitutional to the extent that they allow the State to refuse to surrender to one party to a domestic relations custody dispute a child seized from the other party for abuse or neglect without filing a petition against the noncustodial party." Aplt. App. at 42, ¶ F. In other words, Roberts claims that the provisions at issue are facially unconstitutional because they do not force CYFD and the New Mexico courts to give a non-custodial party, in this case Roberts, the first opportunity to adopt the Child following the termination of parental rights.

The district court concluded that Roberts lacks standing to pursue her constitutional challenges, and the court analyzed the standing issue in terms of Roberts' status both as a grandmother and as an alleged guardian, concluding that, in either capacity, Roberts does not have a fundamental right or liberty interest in the care, custody, and control of the Child. *Id.* at 168-74. Although our analysis of the standing issue differs from the district court's analysis, we agree with the court's ultimate conclusion that Roberts lacks standing to pursue her constitutional challenges. [5] *See United States v. Sandoval* , 29 F.3d 537, 542 n.6

---

[5] With respect to Roberts' status as an alleged guardian of the Child, the district court found that "the record is inconclusive about what type of guardianship relationship was created by the February, 1997 order and as to whether that guardianship was terminated by the October, 1998 order." Aplt.

(continued...)

(10th Cir. 1994) (stating that this court is "free to affirm a district court on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court").

"Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of a complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Here, the district court treated defendants' Rule 12(b)(1) motion as a facial attack. Accordingly, we presume that all of the allegations in Roberts' complaint are true, *id.*, and we must determine whether the allegations, if proven, would be sufficient to establish subject matter jurisdiction in the district court. However, "we conduct our review mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quotation omitted). Moreover, in analyzing the standing issue de novo, "we are not bound by conclusory allegations, unwarranted

---

[5](...continued)
App. at 171-72. As a result, "for the purposes of [defendants'] motion to dismiss only, the Court presume[d] that Plaintiff was appointed as the Child's permanent guardian and that the guardianship was never properly terminated." *Id.* at 172. As explained herein, we disagree with the district court's assertion that the record is inconclusive as to whether the guardianship was terminated by the New Mexico district court's October 1998 order.

inferences, or legal conclusions." *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).

It is well established that the Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quotation omitted). It is also firmly established that the substantive component of the Due Process Clause grants parents a fundamental right and liberty interest in the care, custody, and control of their children. *Id.* at 65-66. In addition, the Due Process Clause contains a procedural component, and "the procedural component . . . protects more than just fundamental rights. It protects all liberty interests that are derived from state law or the Due Process Clause itself." *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995).

In this case, Roberts is claiming that she has a liberty interest and fundamental right to obtain custody of the Child based solely on her alleged status as the Child's guardian under New Mexico law, and Roberts has expressly disavowed any reliance on her legal status as the Child's maternal grandmother. *See* Aplt. App. at 182 (stating that "Plaintiff never alleged that her grandparent relationship with [the Child] had any bearing on this case, or either of the cases in the two state courts"). Thus, to resolve the standing issue, we must determine

-11-

whether Roberts has alleged sufficient facts to establish that she was the Child's guardian under New Mexico law. And the relevant time period that we must focus on is March 2001 when the New Mexico district court denied Roberts' motion to intervene in the Termination Case.

We conclude that Roberts has alleged insufficient facts to support her claim that she was the Child's guardian at the time her motion to intervene was denied. [6] As set forth above, while Roberts was appointed as the Child's guardian in February 1997, that appointment was only valid "until further Order of this Court." Subsequently, the mother filed a motion in the Guardianship Case in September 1997 to have the appointment revoked and custody of the Child returned to her. In October 1998, the New Mexico district court entered an order in the Guardianship Case transferring primary physical custody and sole legal custody of the Child to the mother. *Id.* at 46, 54. While it appears that the transfer of custody to the mother was initially only a temporary transfer, *id.* at 46, Roberts has failed to allege any facts showing that any form of custody was ever returned to her. In fact, it is undisputed that defendant CYFD subsequently obtained custody of the child in the Termination Case, and that the New Mexico

---

[6] Because we conclude that Roberts has failed to show that she was the Child's guardian during the relevant time period, we need not reach the additional question decided by the district court; namely, whether guardians have a legally-protected interest under New Mexico law in the care, custody, and control of a child.

-12-

district court expressly granted CYFD "the authority to determine the physical placement of the child for her safety and welfare." Aplee. Supp. App. at 40.

In light of these undisputed facts, we cannot accept Roberts' conclusory allegation that she was the Child's guardian under New Mexico law in March 2001 when her motion to intervene in the Termination Case was denied. Consequently, Roberts has no legal basis for asserting that she, as a guardian, was denied a liberty interest or fundamental right in the care, custody, and control of the Child. Although for different reasons, we thus agree with the district court that Roberts lacks standing to pursue her constitutional challenges. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1255 (10th Cir. 2004) (stating that a plaintiff does not have standing under Article III of the United States Constitution unless there has been "an invasion of a legally protected interest") (quotations omitted).

### 3. Claims Against the FBI.

Roberts sought mandamus relief in the district court in the form of an order directing the FBI to investigate and stop what she characterized as New Mexico's unlawful detention of the Child, and she named Thomas Kuker, Special Agent in Charge, Albuquerque Division of the FBI, as a defendant. Roberts based her

-13-

claim for mandamus relief on 28 U.S.C. § 533, [7] claiming that "[t]he F.B.I. has an affirmative duty under [§ 533] to act to investigate and to halt the ongoing violation of federal criminal statutes . . . by Defendants Hartz and Douglas in continuing to hold [the Child]." Aplt. App. at 38, ¶ 68. Because Roberts' claim for mandamus relief could be asserted against Agent Kuker only in his official capacity, the district court concluded that Roberts was "essentially suing the United States, which has sovereign immunity to suit unless it has consented to be sued." *Id.* at 174. Further, the court concluded that § 533 "does not contain language that could be construed as an unequivocal waiver of sovereign immunity for a private citizen's legal action against Agent Kuker for electing not to investigate a certain matter." *Id.* at 175. The court therefore determined that the United States' sovereign immunity barred Roberts' claim for mandamus relief, and the court dismissed the claim for lack of subject matter jurisdiction. *Id.*

We agree with the district court's analysis. We also note that the sole argument advanced by Roberts in this appeal in support of her claim for mandamus relief is that she should be granted leave to amend her complaint to assert a claim against Agent Kuker under 5 U.S.C. § 701. *See* Aplt. Br. at 31. Roberts' reliance on § 701 is misplaced, however, because she failed to raise

---

[7] In relevant part, § 533 provides that the United States Attorney General may appoint officials "to detect and prosecute crimes against the United States." 28 U.S.C. § 533(1).

§ 701 in the district court proceedings, and she has not articulated a reason for us to depart from the general rule that "a federal appellate court does not consider an issue not passed on below." *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (quotation omitted). Moreover, regardless of whether 5 U.S.C. §§ 701-706 provide federal district courts with jurisdiction to review actions of federal agencies in certain administrative contexts,[8] these statutes do not provide any basis for mandamus relief in this case. The initiation of a criminal investigation by the FBI is a discretionary act, and the federal courts do not have the power to grant mandamus relief with respect to discretionary acts of FBI officers. *See Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982). As a result, it would be futile to grant Roberts leave to amend her complaint.

The judgment of the district court is AFFIRMED. We also GRANT: (1) the motion to supplement the record that Roberts filed on September 24, 2003; and (2) the motion to add a document to the supplemental appendix that defendants filed on October 29, 2003.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[8] Section 701 is part of the judicial review provisions contained in the federal Administrative Procedure Act. *See* 5 U.S.C. §§ 701-706.

-15-