FILED
United States Court of Appeals
Tenth Circuit

June 22, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANN ELAINE CAMPBELL,

        Plaintiff - Appellant,

    v.

CITY OF SPENCER, an Oklahoma
municipality; TOWN OF FOREST
PARK, an Oklahoma municipality,

        Defendants - Appellees.

No. 11-6041

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:09-CV-00821-HE)**

---

H. Craig Pitts, Rubenstein & Pitts, P.L.L.C., (Daniel G. Couch, Rubenstein &
Pitts, P.L.L.C., and Eugene K. Bertman, McCormick & Bryan, P.L.L.C., with him
on the briefs), Edmond, Oklahoma, for Plaintiff - Appellant.

David W. Lee, Lee Law Center, P.C., (Emily B. Fagan, Lee Law Center, P.C., and
Phillip W. Anderson, Collins, Zorn & Wagner, P.C., with him on the brief),
Oklahoma City, Oklahoma, for Defendants - Appellees.

---

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Dr. Ann Elaine Campbell put horses out to pasture on land she owns in two Oklahoma municipalities—the City of Spencer (the City) and the Town of Forest Park (the Town). After an animal-welfare investigation, City and Town authorities executed search warrants and seized 44 horses from her properties. The two municipalities successfully petitioned a state court to order forfeiture of the horses unless the owner posted a security bond to pay for their maintenance from the date of seizure. *See* Okla. Stat. tit. 21, § 1680.4 (West 2012).

After unsuccessfully appealing the forfeiture and bond determinations in state court, Dr. Campbell filed an action under 42 U.S.C. § 1983 in federal court against the City and the Town, alleging that they violated the Fourth Amendment by unlawfully searching her property and seizing her horses, violated the Fifth Amendment by depriving her of her horses without due process or just compensation, and violated the Eighth Amendment by obtaining an excessive fine through an unreasonable forfeiture bond. The court held that it lacked jurisdiction under the *Rooker-Feldman* doctrine, which bars the lower federal courts from engaging in appellate review of state-court judgments. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983).

On appeal Dr. Campbell contends that the district court erred in applying the *Rooker-Feldman* doctrine. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings. We agree that

the district court lacked jurisdiction to consider the Fifth and Eighth Amendment claims, which are barred by *Rooker-Feldman* because they challenge the state-court judgment; but it erred in dismissing the Fourth Amendment claims to the extent that they concern preforfeiture events.

## I.    BACKGROUND

Dr. Campbell maintained horses in both the City and the Town.  On July 27, 2007, City police received an animal-cruelty complaint and went to one of her properties to investigate.  The Oklahoma County Sheriff's office was asked to assist in the investigation.  A deputy sheriff observed horses that appeared malnourished and emaciated.  On July 31 officers obtained and executed search warrants, seized 44 horses, and took them to Blaze's Tribute Equine Rescue.[1]

On August 6 the City and the Town filed a petition in Oklahoma County District Court seeking immediate forfeiture of the horses under Okla. Stat. tit. 21, § 1680.4(C)(1), which permits forfeiture if the court finds that "probable cause exists that an animal has been abused."  The petition also sought a security bond for the horses' maintenance; the owner may pay the bond to prevent permanent forfeiture.  The court held a hearing on August 10.  It found probable cause, ordered immediate forfeiture, and set a $68,305 bond as "sufficient to reimburse all reasonable and anticipated costs incurred by the agencies caring for the 44

---

[1] Blaze's Tribute Equine Rescue, Inc. was originally a defendant in this action.  But it was later voluntarily dismissed without prejudice, and it is not a party to this appeal.

horses from the date of seizure for a period of 90 days." *Id.* at 78.  Dr. Campbell appealed to the Oklahoma Court of Civil Appeals, arguing that the trial court had denied her due process by "failing to conduct a separate forfeiture and bond hearing for each horse seized," *id.*, Vol. II at 321; that it had insufficient evidence to support its finding of probable cause for all the horses; and that it had erred by refusing to consider her management plan for the horses.  The court affirmed and the Oklahoma Supreme Court denied certiorari.

Dr. Campbell filed her § 1983 action in the United States District Court for the Western District of Oklahoma.  Her complaint alleges that the City and the Town (1) violated her rights under the Fourth Amendment by unlawfully searching her property and seizing her horses; (2) violated her Fifth Amendment rights to due process and just compensation by confiscating the horses; and (3) violated her Eighth Amendment protection against excessive fines by obtaining an unreasonable bond.  The City and the Town filed motions to dismiss on a number of grounds, including the *Rooker-Feldman* doctrine.  The district court granted the motions, *see Campbell v. City of Spencer*, No. CIV-09-0821-HE, 2010 WL 1780304, at *3 (W.D. Okla. May 4, 2010), concluding that her claims were "inextricably intertwined with the state court judgment, thus making *Rooker-Feldman* applicable," *id.* at *2.  It reasoned that her claims were all "based on a single injury—the loss of her horses," *id.,* and that the relief sought "would

-4-

'necessarily undo the Oklahoma [state] court's judgment,'" *id.* at *3 (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 477 (10th Cir. 2002)).

## II.    DISCUSSION

There appear to be multiple reasons why Dr. Campbell's claims cannot succeed.  We limit our review, however, to the merits of the district court's dismissal for lack of subject-matter jurisdiction.  We review that dismissal de novo.  *See Mann v. Boatright*, 477 F.3d 1140, 1145 (10th Cir. 2007).

We agree with the district court that it lacked jurisdiction over Dr. Campbell's due-process and excessive-fine claims.  But we disagree with its ruling that it lacked jurisdiction over her claims challenging the search and seizure.  Resolution of those claims does not require us to review the state-court judgment.  As we stated in *Bolden v. City of Topeka,* 441 F.3d 1129, 1139 (10th Cir. 2006), "When the state-court judgment is not itself at issue, the [*Rooker-Feldman*] doctrine does not prohibit federal suits regarding the same subject matter, or even the same claims, as those presented in the state-court action."

A review of the *Rooker-Feldman* doctrine is in order.  *Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments.  The doctrine originated in *Rooker*, where the plaintiffs had lost in a lower state court in Indiana, unsuccessfully appealed to the Indiana Supreme Court, and been denied review by the Supreme Court.  *See* 263 U.S. at 414.  The plaintiffs then filed suit in federal district court, claiming that

the state-court judgment should be overturned on constitutional grounds. *See id.* at 414–15. The district court dismissed for lack of jurisdiction, and the Supreme Court affirmed. *See id.* at 415. It reasoned that "[u]nder the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character." *Id.* at 416 (citing the predecessor to 28 U.S.C. § 1257). In other words, the Court held that when Congress vested the Supreme Court with appellate jurisdiction over state-court judgments, it implied that the lower federal courts lacked authority to review state-court judicial proceedings.

*Feldman*, the Supreme Court's next articulation of this doctrine, is central to understanding both the *Rooker-Feldman* doctrine and much of the confusion that surrounds it. The two *Feldman* plaintiffs had submitted unsuccessful petitions to the District of Columbia Court of Appeals to waive its rule requiring an applicant to the D.C. bar to have graduated from a law school accredited by the American Bar Association (ABA). *See Feldman*, 460 U.S. at 464–73. Dissatisfied with the court's decisions, they filed suit in federal district court, alleging that the D.C. Court of Appeals had violated their due-process rights and federal antitrust laws by failing to consider their individual qualifications. *See id.* at 468–69, 472–73.

The Supreme Court characterized the denials of the plaintiffs' requests as judicial decisions. Hence, the district court could not review the denials. *See*

-6-

*id.* at 486–87. The Court said that the plaintiffs' allegations that the "[D.C.] Court of Appeals acted arbitrarily and capriciously in denying their petitions for waiver" were barred by *Rooker* because they would have "required the District Court to review a final judicial decision of the highest court of a jurisdiction in a particular case." *Id.* at 486.

On the other hand, the Court held that not every claim in the plaintiffs' complaints was outside the district court's jurisdiction. In addition to challenging the D.C. court's refusal to allow them to take the bar exam, the plaintiffs also challenged the D.C. rule that membership in the bar was limited to graduates of ABA-accredited law schools. *See id.* at 469 n.3, 472–73. The Court held that the district court could hear that challenge because the rule was promulgated by the D.C. court "in a nonjudicial capacity," *id.* at 485, and review of the rule did "not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding," *id.* at 486; *see id.* at 486–87.

*Feldman* may seem straightforward enough. But difficulty in interpretation has arisen because of the Court's use of the term *inextricably intertwined* in explicating its decision. The term first appeared in a footnote expressing the Court's disapproval of the decision in *Dasher v. Supreme Court of Texas*, 658 F.2d 1045 (5th Cir. 1981). *See Feldman*, 460 U.S. at 482 n.16. That opinion had held that a federal district court had jurisdiction to consider a constitutional challenge to the state court's refusal to admit a person to the state bar when that

challenge had not been raised in state court. *See Dasher*, 658 F.2d at 1051. The Court wrote:

> If the constitutional claims presented to a United States district court are *inextricably intertwined* with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state-court decision. This the district court may not do.

*Feldman*, 460 U.S. at 482 n.16 (emphasis added). What did the words "inextricably intertwined" add? The point that the Court was making was that a district-court challenge to the D.C. court's waiver denial would be barred even if the challenge was based on a ground not raised in the D.C.-court proceeding. It is unclear whether a claim could be inextricably intertwined with a judgment other than by being a challenge to the judgment. The Court certainly did not mean that a claim is inextricably intertwined with a judgment just because the issues raised by the claim had been (or could have been) resolved in the proceedings leading to the judgment. After all, *Feldman* did not bar the plaintiffs' federal-court challenge to the bar-admission rule, even though the constitutional and antitrust bases of the challenge had been raised in the D.C.-court proceedings seeking waivers from the rule. *See id.* at 466–67, 487. Indeed, the plaintiffs' success in the permitted challenge to the rule would establish that the denial of the waiver had been improper, and would likely lead to a later successful request for a waiver, thereby relieving the plaintiffs of some of the harm caused by the "judgment" denying a waiver. Thus, the *Rooker-Feldman* doctrine does not bar

an action just because it seeks relief inconsistent with, or even ameliorative of, a state-court judgment.[2]

Apparently the post-*Feldman* Supreme Court has also been unsure of what was meant by "inextricably intertwined." No later opinion has relied on the term. Indeed, the term appears in only three later opinions of the Court, twice merely quoting lower-court opinions that were vacated or reversed and once quoting both a lower-court opinion and, without explication, the use of the term in *Feldman*. *See Lance v. Dennis*, 546 U.S. 459, 462 (2006) (quoting lower-court opinion)*; Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 (2005) (quoting *Feldman*), 286 n.1 (quoting *Feldman*), 291 (quoting lower-court opinion); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 8 (1987) (quoting lower-court opinion).

More importantly, the Supreme Court has reformulated the *Rooker-Feldman* doctrine, apparently out of concern that the doctrine "ha[d] sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of

---

[2] The Supreme Court used the term *inextricably intertwined* on one other occasion in *Feldman*. Summarizing its decision, it wrote that the allegations in plaintiffs' complaints that challenged the denial of the waiver were "*inextricably intertwined* with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny the respondents' petitions," 460 U.S. at 486–87 (emphasis added). This use of the term provides no additional enlightenment on its meaning.

preclusion law pursuant to 28 U.S.C. § 1738." *Exxon Mobil*, 544 U.S. at 283.

Eschewing the inextricably-intertwined language, it wrote:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284. We think it best to follow the Supreme Court's lead, using the *Exxon Mobil* formulation and not trying to untangle the meaning of *inextricably intertwined*. The essential point is that barred claims are those "complaining of injuries caused by state-court judgments." *Id.* In other words, an element of the claim must be that the state court wrongfully entered its judgment.

Before turning to the specifics of the case before us, we emphasize a point stated in *Exxon Mobil*. "*Rooker-Feldman* does not . . . override or supplant preclusion doctrine." *Id.* at 284. This proposition was suggested in *Feldman*, which held that the *Rooker-Feldman* doctrine did not bar plaintiffs' challenge to the validity of the District of Columbia membership rule, even if the same arguments had been presented in the D.C.-court proceedings. Thus, a federal-court claim is not barred by *Rooker-Feldman* as a complaint "of injur[y] caused by [a] state-court judgment[]," *Exxon Mobil*, 544 U.S. at 284, just because it seeks relief inconsistent with that judgment. For example, a plaintiff who lost a civil-rights claim against a defendant in state court would not be barred by *Rooker-Feldman* from bringing an identical civil-rights claim in federal court.

The defendant would have to rely on preclusion doctrine, not *Rooker-Feldman*, for relief from the new claim. As we stated in *Bolden*:

> Appellate review—the type of judicial action barred by *Rooker-Feldman*—consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment. In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not *Rooker-Feldman*.

441 F.3d at 1143.

The district court in this case relied on language from our pre-*Exxon Mobil* decision in *Kenmen*, 314 F.3d 468. It is essential to read that language in the context of the case. In *Kenmen* a city had sought and obtained an injunction in state court that prevented the plaintiffs from storing several tons of magnesium within the city limits. *See id.* at 471. After the plaintiffs allegedly had to sell the magnesium at a discounted price, they sued in federal court, claiming that (1) the city's actions constituted an unlawful taking of their property without due process of law and (2) the city's application of a local fire code was preempted by federal law. *See id.* at 472. The district court dismissed the claims under *Rooker-Feldman* and the plaintiffs appealed.

We affirmed. We noted that "*Rooker-Feldman* protects state-court judgments from impermissible appellate review by lower federal courts," *id.* at 476, and found it significant that "absent the Oklahoma state court's injunction, no forced sale of the magnesium would have occurred and plaintiffs would not be seeking relief in federal court," *id.* at 477. In other words, the plaintiffs sought damages that were "attributable to losses they sustained as a result of being forced—*by the state-court order*—to remove magnesium from [the city] storage facility." *Id.* (emphasis added). Because the injury that the plaintiffs complained of was caused by the judgment, their lawsuit amounted to an appeal of the judgment and was therefore barred by *Rooker-Feldman*. *See id.* at 477–78.

In support of the decision, the opinion pointed out that the relief sought would "necessarily undo the Oklahoma state court's judgment." *Id*. at 477. We were not suggesting, however, that just because the requested federal judgment would be contrary to the state judgment, the federal claim is barred by *Rooker-Feldman*. After all, whenever the doctrine of claim preclusion applies, one could say that the judgment sought in the second litigation would "undo" the first judgment because it would be contrary to it. Significantly, in *Kenmen* the allegedly wrongful act that caused damage was the state-court order itself. *See id.* at 476–77. The suit required a determination of the bona fides of the prior state-court judgment. The claims had merit only if the injunction was unlawful on the

-12-

record before the state court that issued it. Hence, our decision was consistent with our post-*Exxon Mobil* opinion in *Bolden*.

With this doctrine in mind, we can readily resolve this appeal. Properly understood, Dr. Campbell's claim under the Fifth Amendment is a direct attack on the state court's judgment because an element of the claim is that the judgment was wrongful. To be sure, the complaint speaks in terms of actions by the defendants. It alleges that the "[City and the Town] deprived [Dr. Campbell] of her property without due process of law and without just compensation," and that this "constitute[d] an unlawful taking of [her] property." Aplt. App., Vol. I at 18. Similarly, Dr. Campbell argues on appeal that the defendants deprived her of due process by "unconstitutionally using Oklahoma's *forfeiture procedures*." Aplt. Br. at 22 (emphasis added). But the deprivation of property that was allegedly without just compensation or due process was the deprivation ordered by the state court. Thus, this claim has merit only if the state-court forfeiture order was unlawful on the record before that court. In the words of *Exxon Mobil*, the claim is one "brought by [a] state-court loser[] complaining of [an] injur[y] caused by [a] state-court judgment[]." 544 U.S. at 284. It was therefore properly dismissed under *Rooker-Feldman*.

Similarly, the Eighth Amendment claim is that "Defendants sought *and obtained* an excessive fine by using the seizure statutes to forfeit [her] horses to Defendants," and "sought an excessive fine *through the imposition of an*

-13-

*unreasonable bond.*" Aplt. App., Vol. I at 18–19 (emphasis added). The imposition of a bond and the forfeiture of the horses were, however, acts of the state court. Once again, the merits of this claim cannot be stated except in terms of the state-court judgment. Neither the City nor the Town independently imposed an excessive fine. The alleged constitutional wrong was the content of the judgment. It was not, for example, some act by a defendant that led to the judgment. The claim was barred by *Rooker-Feldman*.

Dr. Campbell's Fourth Amendment claims, however, are not barred. She could raise the same claims even if there had been no state-court proceedings. She asserts that officers of the City and the Town improperly searched her property and seized her horses. The allegedly unconstitutional acts preceded any judgment by the state court. The state court considered the same issues—the lawfulness of the search and seizure—but the decision by the state court is irrelevant to the *merits* of the federal-court claims. Although a federal-court judgment in her favor on the Fourth Amendment claims may be inconsistent with the state-court judgment, that is a matter of preclusion doctrine, not *Rooker-Feldman*.

## III.   CONCLUSION

We AFFIRM the district court's dismissal of Dr. Campbell's Fifth and Eighth Amendment claims as barred by the *Rooker-Feldman* doctrine. We

-14-

REVERSE the dismissal of the Fourth Amendment claims and REMAND for proceedings consistent with this opinion.