**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 26, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PARKER WILSON,

    Plaintiff - Appellant,

v.

KIM BIMESTEFER, in her individual and
official capacities as Executive Director of
the Colorado Department of Health Care
Policy and Financing; TOM MASSEY, in
his individual and official capacities as
Executive Director and Chief Operating
Officer of the Policy, Communications, and
Administration Office of the Colorado
Department of Health Care Policy and
Financing; DAVID L. SMITH, in his
individual and official capacities as
Manager of Benefits Coordination Section
for the Colorado Department of Health
Care Policy and Financing; ASHLEY
DIRIENZO, in her individual and official
capacities as Recovery Officer at the
Colorado Department of Health Care
Policy and Financing,

    Defendants - Appellees.

No. 20-1233
(D.C. No. 1:19-CV-01633-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Before **MORITZ**, **BALDOCK**, and **KELLY**, Circuit Judges.

_____

This 42 U.S.C. § 1983 case arose after the Colorado Department of Health Care Policy and Financing ("the Department") filed a petition in Colorado probate court to terminate a special needs trust established for Plaintiff Parker Wilson. The trust allowed Wilson, a paraplegic, to maintain funds for medical expenses not covered by Medicaid, while remaining eligible for Medicaid. The probate court granted the petition and the proceeds of Wilson's trust were paid to Colorado.

Wilson sued the Department officials involved in the decision to seek termination of his trust, alleging violations of his constitutional and federal statutory rights. He sought damages as well as injunctive and declaratory relief. The district court dismissed Wilson's claims for damages and reinstatement of his trust under the *Rooker-Feldman* doctrine.[1] It also dismissed Wilson's remaining declaratory and injunctive claims for lack of standing. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

Parker Wilson was in a car accident in Colorado when he was 10 years old. His mother died in the accident, and Wilson was rendered paraplegic. He received a settlement from the resulting personal injury claim, and his family placed those funds

_____

[1] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

into a special needs trust to cover medical and other expenses not covered by Medicaid.

Under federal law, any Medicaid benefits paid for an individual must be repaid from any remaining assets of a special needs trust upon the individual's death. 42 U.S.C. § 1396p(b)(1), (d)(4)(A). Colorado law, however, requires repayment from trust assets not only upon death, but also upon termination of a trust during the individual's lifetime. Colo. Rev. Stat. § 15-14-412.8(2)(b). And until 2020, a Department regulation provided that a trust terminated whenever an individual moved to another state. 10 Code Colo. Regs. 2505-10, § 8.100.7.E.6.b.i.e. (2019).[2]

In 2017, Wilson and his father moved to South Carolina, where Wilson again qualified for Medicaid benefits. But based on Wilson's move, the Department—operating under the then-existing version of its regulation—filed a petition in the probate court to terminate Wilson's special needs trust. Wilson's co-trustees filed a response arguing that early termination violated federal law; Wilson, however, chose not to respond to the petition. Instead, he initiated a separate proceeding in probate court seeking to "decant" the assets of the special needs trust by moving them into a pooled trust under 42 U.S.C. § 1396p(d)(4)(C).

---

[2] After Wilson filed his federal lawsuit, the Department modified its regulation so that a special needs trust does not terminate when an individual moves to another state, so long as the individual continues to receive medical assistance under another state's Medicaid program, and the trust is required for the individual to receive those medical assistance benefits. *See* 10 Code Colo. Regs. 2505-10, § 8.100.7.E.6.b.i.e. (2020).

The probate court issued an order terminating the trust on December 26, 2018. On the same day, the probate court rejected Wilson's petition in the separate decanting case. Wilson appealed the decanting order but not the termination order. The Colorado Court of Appeals, however, dismissed the decanting appeal as moot based on Wilson's decision not to appeal the probate court's termination of the trust.

While the decanting appeal was pending, Wilson filed the underlying complaint in federal district court. He sued the defendants, four Department officials, in their individual and official capacities under 42 U.S.C. § 1983 for alleged constitutional and statutory violations related to the termination of his trust. The operative complaint sought damages as well as declaratory and injunctive relief. It requested, among other things, a permanent injunction "requiring Defendants to return to Mr. Wilson all funds belonging to him that were unlawfully seized." Aplt. App. vol. I at 199; *see also id.* at 190 ("This Court should order that Mr. Wilson's assets be returned to him . . . .").

Defendants moved to dismiss, and the district court granted the motion. It held the *Rooker-Feldman* doctrine barred Wilson's claims to the extent they sought "to undo the [probate] court's termination order and remedy defendants' conduct in seeking and enforcing that order." Aplt. App. vol. II at 383. Because Wilson no longer had a special needs trust, the district court dismissed for lack of standing his remaining claims for prospective relief. This appeal followed.

## II. Discussion

### A. *Rooker-Feldman*

Wilson argues the district court erroneously dismissed his claims for damages and for an injunction requiring reinstatement of his trust. The district court dismissed those claims under the *Rooker-Feldman* doctrine; we review such a dismissal de novo. *See Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012).

The *Rooker-Feldman* doctrine recognizes that only the Supreme Court has jurisdiction over appeals from final state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Thus, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Id.* The doctrine applies to federal cases "brought by state-court losers complaining of injuries *caused by state-court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added).

Thus, where a plaintiff's alleged injuries precede the state-court judgment, *Rooker-Feldman* does not bar the plaintiff's claims in federal court. For example, in *Campbell v. City of Spencer*, local authorities seized the plaintiff's horses and then filed a petition in state court seeking immediate forfeiture. 682 F.3d at 1280. The state court granted the petition and set a bond. *Id.* The plaintiff then sued in federal district court under § 1983, challenging the initial seizure under the Fourth Amendment, the subsequent forfeiture under the Fifth Amendment, and the bond amount under the Eighth Amendment. *Id.*

5

We held the plaintiff was barred from challenging the forfeiture and bond amount because "[t]he imposition of a bond and the forfeiture of the horses were . . . acts of the state court." *Id.* at 1285. In other words, "[t]he alleged constitutional wrong was the content of the judgment." *Id.* at 1285. In contrast, because the plaintiff's challenge to the initial seizure of the horses "preceded any judgment by the state court," we held the plaintiff was not barred by *Rooker-Feldman* from pursuing that claim in federal court. *Id.*; *see also Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1175 (10th Cir. 2018) (holding *Rooker-Feldman* did not apply to federal court claims for damages relating to state court foreclosure proceedings where plaintiffs' alleged facts preexisted those proceedings).

Here, Wilson's injuries did not precede the probate court's order terminating his trust. The gist of his complaint is that "[t]he State of Colorado succeeded in getting the approval of the Denver Probate Court to terminate Mr. Wilson's trust in order to take his trust away from him and pay all trust assets to the State of Colorado." Aplt. App. vol. I at 161. His complaint makes clear that the injuries of which he complains are the result of the probate court's order:

> The State of Colorado has now received an order from the Denver Probate Court freezing Mr. Wilson's trust assets, impeding his ability to pay necessary expenses, including medical treatment not covered by Medicaid. Such actions are causing and will continue to cause Mr. Wilson significant hardship as he is precluded from certain medical treatment that he otherwise would be receiving through his use of assets held in trust, and he is further prevented from pursuing a college education which he had planned to pay for using trust funds.

6

*Id.* at 162.  In addition, Wilson's claimed damages in the Scheduling Order was exactly the value of his terminated trust.  Aplee. App. vol. I at 9.  We hold that because Wilson's alleged injuries were caused by and did not precede the probate court's order, the *Rooker-Feldman* doctrine applies.

Wilson argues that because his complaint focuses on defendants' actions and not the probate court's decision, he would have had viable damages claims even if the probate court had not terminated the trust.  But the deprivation of his property was, by the terms of his own complaint, the result of the probate court's order.  Wilson argues that he seeks not to overturn the probate court's termination order, but to hold the defendants accountable for their "bad acts"—which included the decision in the first place to invoke the Colorado regulation and seek termination of the trust.  It is true the decision to invoke state court procedures technically precedes the resulting judgment, but Wilson cites no authority supporting a distinction for *Rooker-Feldman* purposes between an official's decision to pursue a state order and the actual issuance of the order itself.  In fact, our case law does not recognize such a distinction.  *See Campbell*, 682 F.3d at 1285 (holding *Rooker-Feldman* applied where plaintiff alleged "Defendants sought *and obtained* an excessive fine" in state court (internal quotation marks omitted)); *see also Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007) (holding *Rooker-Feldman* barred constitutional claims against individual defendants for their "complicity with the probate court's orders").[3]

---

[3] Wilson also argues *Rooker-Feldman* does not apply because the probate court had no authority to actually decide his constitutional challenges to the defendants'

7

In short, we hold the district court correctly concluded the *Rooker-Feldman* doctrine barred Wilson's claims for reinstatement of his trust and other damages.

## B. Standing

The district court held *Rooker-Feldman* did not apply to the extent Wilson's complaint (1) included a general constitutional challenge to Colorado's statutes and regulations concerning special needs trusts and (2) sought an injunction to prevent their future enforcement. Aplt. App. vol. I at 383. But the district court held that any such remaining claim would be moot because Wilson's trust had been terminated and the only available remedies would not affect his rights. *Id.* at 384-85 (citing *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). The district court further held that Wilson could not meet the redressability prong of Article III standing because the only available relief would not redress his alleged injuries. *Id.* at 385-86 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

Wilson does not challenge the merits of the district court's standing analysis. He contends only that if we reverse the district court's *Rooker-Feldman* dismissal of Wilson's damages and reinstatement-of-trust claims, then we must necessarily reverse the district court's ruling on standing. Because we affirm the district court's *Rooker-Feldman* analysis, Wilson's argument fails.

---

actions. As the district court noted, however, under Colo. Rev. Stat. § 13-9-103(5), the probate court "has jurisdiction to determine every legal and equitable question arising out of or in connection with express trusts."

8

### III. Conclusion

For the foregoing reasons we affirm the district court's judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge