**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 6, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

KENDRICK SIMPSON,

    Plaintiff - Appellant,

v.

CHRISTE QUICK, in her official capacity
as Warden of the Oklahoma State
Penitentiary; JUSTIN FARRIS, In his
official capacity as interim Executive
Director of the Oklahoma Department of
Corrections; GENTNER DRUMMOND, in
his official capacity as Attorney General of
Oklahoma,

    Defendants - Appellees.

No. 26-6008
(D.C. No. 5:25-CV-01221-D)
(W.D. Okla.)

_____

**ORDER**
_____

Before **HOLMES**, Chief Judge, **HARTZ**, **TYMKOVICH**, **MATHESON**,
**BACHARACH**, **PHILLIPS**, **McHUGH**, **MORITZ**, **EID**, **CARSON**, **ROSSMAN**, and
**FEDERICO**, Circuit Judges.

_____

On February 4, 2026, the court issued its order and judgment in this matter. An

active judge of the court then called a poll, *sua sponte*, to consider en banc review of the

panel decision. Following the call for a poll, Appellant filed *Appellant Kendrick*

*Simpson's Petition for Panel Rehearing or Rehearing En Banc* ("Petition"), which was

circulated to the en banc court. Appellees were offered an opportunity to respond to the Petition but elected not to do so.

Appellant's request for panel rehearing is denied.

A majority of the judges in regular active service voted against en banc rehearing; the poll failed and Appellant's request for en banc rehearing is denied. *See* Fed. R. App. P. 40(c). Judges Rossman and Federico voted to grant en banc rehearing.

Judge Rossman and Judge Federico have prepared the attached written dissentals from the denial of en banc rehearing. Judge Federico joins Judge Rossman's dissental.

The Petition is DENIED. The mandate shall issue forthwith.

Entered for the Court,


Per Curiam

No. 26-6008, *Simpson v. Quick*

**ROSSMAN**, J., dissenting from denial of rehearing *en banc.*

I respectfully disagree with today's decision to deny the petition for rehearing *en banc.*

This capital case implicates a question that, in my view, is not settled by our circuit law or Supreme Court precedent: whether, after *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the *Rooker-Feldman* doctrine can be triggered by a state-court decision that is not "on the merits." Mindful of the limited circumstances in which the *Rooker-Feldman* doctrine should apply but given the many cases in which it is actually applied, this court or the Supreme Court should resolve this question of exceptional importance.

No. 26-6008, *Simpson v. Quick*
**FEDERICO**, Circuit Judge, dissenting from denial of rehearing en banc.

Kendrick Simpson was convicted of a capital crime and sentenced to death under Oklahoma law. He is scheduled to be executed next week, Thursday, February 12, 2026 at 10:00 a.m. Simpson claims the Oklahoma execution statute is unlawful because it provides prison officials "near-total discretion" in deciding the method of his execution. And, he alleges, the prison has previously used this power to torture a man to death. In an attempt to avoid this fate, Simpson sought recourse in Oklahoma's courts. But the Oklahoma Court of Criminal Appeals (OCCA) found his claim had not ripened and declined to decide its merits.

So, Simpson filed an original action in the Western District of Oklahoma. Invoking 42 U.S.C. § 1983, he alleged that OCCA's refusal to hear his claim violates his rights under the United States Constitution. The district court applied the *Rooker-Feldman* doctrine and dismissed his case.[1] But that cannot be correct. Had OCCA decided the merits of Simpson's challenge, the district

---

[1] The district court also ruled that Simpson's claims must be dismissed on the basis of Eleventh Amendment immunity. But Simpson alleges that state rules of adjudication particular to the execution statute violate his rights under the United States Constitution, so he seeks an injunction prohibiting his execution under that source of law. In the absence of an injunction, he alleges the named Defendants will execute him pursuant to the same, unlawful execution statute. Properly framed, this case falls into the *Ex parte Young* exception. *See Reed v. Goertz*, 598 U.S. 230, 234 (2023).

court, and now this court, could surely hear his case. *See Reed v. Goertz*, 598 U.S. 230 (2023); *Skinner v. Switzer*, 562 U.S. 521 (2011). There is no reason, in jurisprudence or common sense, that federal courts must abstain from hearing his due process challenge to the state court's jurisdictional rule.

Nonetheless, a panel of this court affirmed the district court's dismissal. In so doing, this court expanded a doctrine that the Supreme Court will soon consider overruling. *See* Brief for Petitioner at § II, *T. M. v. Univ. of Md. Med. Sys.*, No. 25-197 (U.S. Jan. 14, 2026) (certiorari granted; argument presented in alternative). To reach its holding, this court worked hard to distinguish three recent Supreme Court cases that all point the other direction, and then relied on an unpublished out-of-circuit case that cannot be squared with either our caselaw or that of the Supreme Court. Now, Simpson faces execution without an opportunity to vindicate his claims alleging violations of his constitutional rights.

Because Simpson's case presents "an issue of exceptional public importance" and the panel's Order conflicts with the opinions of the United States Supreme Court and our circuit, we should rehear it before the en banc court. *See* 10th Cir. R. 40.1(B); *accord* Fed. R. App. P. 40(b)(2). I respectfully dissent.

2

## I

This proceeding stems from crimes that were committed two decades ago. Simpson went to a nightclub and got into an argument with two men. An adversary hit him, and Simpson left the club. But when he saw them later the same night, Simpson shot and killed both men. The state charged him with two counts of first-degree murder, and a jury convicted, finding four aggravating circumstances. Simpson was sentenced to death.

From death row, Simpson sought relief in Oklahoma's courts. In that litigation, he brought a facial challenge to the Oklahoma statute authorizing executions. His challenge took the form of an action for injunctive and declaratory relief on the theory that the execution statute violates the Oklahoma Constitution. The statute provides four methods of execution: lethal injection, nitrogen hypoxia, electrocution, and firing squad. Okla. Stat. tit. 22, § 1014. The statute lists the methods in order and allows prison officials to bypass a method if it is either unconstitutional or "unavailable." *See id.* Simpson argued that because the statute does not define unavailability, it creates an unlawful delegation of legislative power prohibited by the Oklahoma Constitution.

Simpson highlighted some of the prison's previous determinations of unavailability. He pointed to the execution of Charles Warner, who died by lethal injection. In the pleadings, Simpson alleged that the prison used the

3

wrong drugs. Warner's last words were: "My body is on fire." R. at 23. Simpson alleged that this demonstrates "[t]he prison tortured a man to death because it failed to find that lethal injection was unavailable." *Id.*

OCCA, though, found Simpson's claim was not ripe. It reasoned: "Unless and until lethal injection is held unconstitutional by a court or is otherwise unavailable, there has been no harm" to Simpson. *Underwood v. Harpe*, No. PR-2024-637, slip op. at 3 (Okla. Crim. App. Sept. 17, 2024). Notably, OCCA's order was filed before Simpson's execution date was set.

Next, Simpson filed his original action in federal court, in the Western District of Oklahoma. There, he argued that he was subjected to a "state process [that] singled out the execution statute as the one statute that cannot be challenged before enforcement." R. at 17. He alleged that although state law provides for pre-enforcement challenges to the constitutionality of statutes, the construction of state justiciability doctrines uniquely prohibits such challenges to the execution statute. Simpson explained: "Before execution, the case is unripe. After execution, the case is moot. Any challenge to the statute goes

4

from unripe to moot instantaneously." *Id.* at 21.[2] This, he argued, denied his rights to procedural due process, judicial access, and equal protection under the United States Constitution.

The district court applied the *Rooker-Feldman* doctrine and Eleventh Amendment immunity to conclude that it did not have jurisdiction over the case. Simpson timely appealed to this court, and a panel of this court affirmed. In my view, this affirmance should be examined by the en banc court. Given that this court has declined further review, I hope this case garners a hard look by the Supreme Court.

## II

For all the judicial ink that has been spilled in its name, *Rooker-Feldman* is at least theoretically straightforward. The doctrine merely acknowledges the statutory edict that direct appeals from a state's highest court may only be

---

[2] This point deserves further explanation. OCCA declared Simpson's challenge was not ripe for adjudication because he didn't show that any method of execution was "unavailable." In his federal complaint, Simpson explained "state law prohibits disclosing information about the execution team or the prison's procurement of lethal injection drugs, essentially making it illegal for Mr. Simpson to investigate the availability of lethal injection." R. at 8; *see also id.* at 25. Also, he alleged that "simply by deeming a method unavailable, the prison can change the execution method at any moment and without notice. The prison can also change the execution protocol at any moment and without notice." *Id.* at 15 (internal citations omitted). So, the thrust of his argument is that he cannot know whether a method of execution is unavailable because he won't find out what method is to be used until the moment arrives for it to be employed. Once employed, his claim is then immediately rendered moot.

5

heard in the Supreme Court of the United States. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) (citing 28 U.S.C. §§ 1257, 1331); *see also Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012) ("[W]hen Congress vested the Supreme Court with appellate jurisdiction over state-court judgments, it implied that the lower federal courts lacked authority to review state-court judicial proceedings."). But, some have observed that instead of hewing to this narrow path, federal district and circuit courts seized on *Rooker-Feldman*'s potential as a "'docket-clearing workhorse'" and transformed it into "an inscrutable abstention doctrine, an untethered way for federal courts to defer to state court litigation of related cases and controversies and a new way to avoid deciding federal questions." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 406 (6th Cir. 2020) (Sutton, J., concurring) (quoting Susan Bandes, *The* Rooker-Feldman *Doctrine: Evaluating Its Jurisdictional Status*, 74 Notre Dame L. Rev. 1175, 1175 (1999)).

In 2005, the Supreme Court, apparently concerned by the doctrine's expansion and frequent usage in district and circuit courts, issued *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280 (2005). There, the Court provided the modern formulation of the doctrine:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by

6

state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284.

In applying this standard, we "follow the Supreme Court's lead" and require that "an element of the claim [] be that the state court wrongfully entered its judgment." *Campbell*, 682 F.3d at 1283. "Thus, a federal-court claim is not barred by *Rooker-Feldman* as a complaint 'of injury caused by a state-court judgment' just because it seeks relief inconsistent with that judgment." *Id.* (alterations adopted and internal citation omitted) (quoting *Exxon*, 544 U.S. at 284). So, where a federal complaint "does not challenge the adverse [state court] decision[]" but instead "targets as unconstitutional the [state] statute [] authoritatively construed," it faces no *Rooker-Feldman* bar. *Skinner*, 562 U.S. at 532. Even though the state court decision itself may be unreviewable, "a statute or rule governing the decision may be challenged in a federal action." *Id.*

We have apparently never applied *Rooker-Feldman* in an analogous case to bar review of a state court judgment that did not address the merits of the

7

claim.[3] There is good reason to think we should not do so now. A state court's jurisdictional determination may have preclusive effect, but *Rooker-Feldman* is distinct from preclusion. *Exxon*, 544 U.S. at 293; *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174 (10th Cir. 2018)*; Campbell*, 682 F.3d at 1283. And it is the law of this circuit that *Rooker-Feldman* does not bar challenges to post-judgment state enforcement procedures. *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 517 (10th Cir. 2023) (citing *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998)).

More to the point is our opinion in *Merrill Lynch Business Financial Services, Inc. v. Nudell*, where this court held that the *Rooker-Feldman* doctrine is inapplicable when a state court does not pass on the merits of the claim. *See* 363 F.3d 1072, 1076 (10th Cir. 2004) (citing *Pittsburg Cnty. Rural*

---

[3] In *Littlejohn v. Quick*, Oklahoma death row inmate Manuel Littlejohn alleged violations of due process in the district court. *See* No. 24-6203 (10th Cir. Sept. 25, 2024), Doc. 2 at 14. The district court found it did not have jurisdiction under *Rooker-Feldman* and Littlejohn asked this court for a stay. In his briefing, he did not address the *Rooker-Feldman* issue. *See id.* at 1-11. And the order that issued in *Littlejohn* did not address the doctrinal basis for the district court's ruling. Instead, it only stated: "Mr. Littlejohn has not addressed the jurisdictional basis for the district court's ruling or established that he is likely to succeed on appeal in arguing that the ruling was incorrect under the *Rooker-Feldman* doctrine or as to Eleventh Amendment immunity." *Id.* (Sept. 26, 2024), Doc. 4 at 3. This statement, made in a stay order and without the benefit of briefing from the parties, neither addresses nor resolves the *Rooker-Feldman* issue raised by Simpson's thorough presentation and argument.

8

*Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 707 (10th Cir. 2004)).[4] Because this case predated *Exxon*, we did not apply the now-operative standard. Instead, we applied the "inextricably intertwined" standard that the Supreme Court eschewed in its *Exxon* reformulation. *See Campbell*, 682 F.3d at 1283.

However, our analysis in *Merrill Lynch* did not rely solely on a determination that the state and federal claims were not "inextricably intertwined." *See* 363 F.3d at 1075–76. Instead, we made the threshold determination that no issue was "actually decided" in state court and, therefore, the dismissal "not on the merits" did not "trigger" application of the "inextricably intertwined" analysis. *See id.* at 1076. Thus, our subsequent reasoning in *Campbell* that we need not "untangle the meaning of inextricably intertwined," *see* 682 F.3d at 1283, does little to unmoor *Merrill Lynch* from its foundations. Even though it predates *Exxon*, this court has not explicitly overruled *Merrill Lynch*, so it may still be good law for the proposition that a state court's non-merits determination does not bring *Rooker-Feldman* into

---

[4] Simpson did not cite *Merrill Lynch* in his briefs to this court. However, he did cite *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229 (10th Cir. 2006), which discusses the "actually decided by a state court" language that is found in *Merrill Lynch*. 441 F.3d at 1233.

9

play. To the extent there is any doubt, this court should have considered the question en banc.

And recent Supreme Court jurisprudence reinforces this teaching. Thrice in recent memory the Court has reviewed challenges to a Texas postconviction DNA statute: *Skinner*; *Reed*; *Gutierrez v. Saenz*, 606 U.S. 305 (2025). All three of those challenges were, like this case, § 1983 suits brought in federal district court after Texas state courts reviewed and denied the defendants' claims on the merits. Yet, in none of those cases did the Supreme Court find *Rooker-Feldman* to be a jurisdictional bar. To the contrary, the Supreme Court explicitly held in two of those cases that *Rooker-Feldman* did not apply. *See Reed*, 598 U.S. at 235; *Skinner*, 562 U.S. at 532. These three cases demonstrate that if OCCA had decided on the merits whether the Oklahoma execution statute comports with the state constitution, then Simpson's federal complaint would suffer no *Rooker-Feldman* bar. It is hard to see why a state rule of justiciability should be any less amenable to review than the "authoritative[] constru[ction]" of a statute, *see Skinner*, 562 U.S. at 532.  Indeed, both statutes and "rule[s] governing the decision may be challenged in a federal action." *Id.* The *Rooker-Feldman* doctrine may be appropriately invoked where a losing party seeks to appeal a state court judgment to a federal district and then circuit court. But it does not insulate from review on federal grounds a state court rule that prevents access to a state court determination in the first place.

10

Simpson's federal complaint alleges that OCCA has applied its ripeness doctrine to render the execution statute unreviewable. R. at 17. In so many words, he argues that this "rule governing [the state court] decision," *Skinner*, 562 U.S. at 532, prevents him from ever having access to a forum for his claim. Simpson "does 'not challenge the adverse' state-court decisions themselves, but rather 'targets as unconstitutional the [Oklahoma doctrine] they authoritatively construed.'" *Reed*, 598 U.S. at 235 (quoting *Skinner*, 562 U.S. at 532). And these allegations are not in service of a request to merely revisit the state court judgment. They support an original federal action under 42 U.S.C. § 1983 alleging violations of Simpson's constitutional rights. Simpson's federal claims are outside the scope of *Rooker-Feldman*.

Resisting this conclusion, the panel cites to an unpublished per curiam disposition of our sister circuit: *Rhoades v. Martinez*, No. 21-70007, 2021 WL 4434711 (5th Cir. 2021). But the reasoning, which was joined by only two of the Fifth Circuit panel's three judges, *see id.* at n*, does not translate.

In *Rhoades*, the Fifth Circuit distinguished *Skinner* because Rhoades had named as defendant a state judge, not a district attorney. *Id.* at *2. It acknowledged this distinction as "fundamental." *Id.* And in this case, of course, Simpson has named no judge as defendant. Even setting that difference aside, *Rhoades* cannot be squared with our precedent or that of the Supreme Court. Although the Fifth Circuit reasoned that a challenge to a jurisdictional

11

determination "cannot be reframed as a denial of due process rooted in the state law rule," it failed to explain how it reached that conclusion. *Id.* And, rather than applying the rule announced in *Exxon*, the Fifth Circuit cited to pre-*Exxon* caselaw for the "inextricably intertwined" standard. *Id.*

In *Campbell*, this court recognized that *Exxon* changed the standard we must apply when considering whether a claim is barred by *Rooker-Feldman,* and thereafter we dropped the "inextricably intertwined" consideration from our jurisprudence. 682 F.3d at 1283. But *Rhoades* explicitly applies the "inextricably intertwined" standard that this court has said no longer applies. The panel's decision makes no mention of this aspect of *Rhoades* and, in my view, simply gives *Rhoades* more weight than it can bear.

### III

I fear that we have departed from the precedent of this court and, more importantly, from the binding precedent of the Supreme Court. As I understand it, the Supreme Court has already given authoritative guidance on how the doctrine applies. Of course, the Supreme Court looks upon *Rooker-Feldman* from a far different vantage point than we do. But from where I sit, precedent compels reversal.

And certainly, this matter is of exceptional public importance – Simpson is set to be executed next week. Given the reasons explained above, I respectfully dissent from denial of en banc review.

12